Joseph DAVIDSON; and Thomas
Davidson, Appellants,

v.

AMERICAN FREIGHTWAYS,
INC., Appellee.

No. 1998–SC–0554–DG.

Supreme Court of Kentucky.

Aug. 24, 2000.

Mike Breen, Mike Breen, Attorney at Law, P.S.C., Bowling Green, Richard M. Breen, Richard Breen Law Offices, P.S.C., Louisville, for Appellants.

Armer H. Mahan, Jr., Petersen Thomas, Lynch, Cox, Gilman & Mahan, P.S.C., Louisville, for Appellee.

M. Austin Mehr, Austin Mehr Law Offices, P.S.C., Lexington, for Amicus Curiae Kentucky Academy of Trial Attorneys.

COOPER, Justice.

■ On May 18, 1994, two tractor-trailer rigs, one owned by Appellee American Freightways, Inc. (AFI) and operated by its employee, William C. Jackson, and the other owned by Appellant Joseph Davidson and operated by Appellant Thomas Davidson, collided on Interstate Highway 65 just south of Louisville, Kentucky. At the time of the accident, AFI was insured by a liability insurance policy issued by Protective Insurance Company. However,

the policy contained a $250,000.00 deductible; and AFI investigated, negotiated, litigated, and ultimately paid those claims with its own money. At trial on the tort claims, the Davidsons were granted a directed verdict on the issue of liability and the jury awarded them damages in the total sum of $71,143.27. The Davidsons then filed this action against AFI for compensatory and punitive damages arising out of AFI's alleged failure to attempt in good faith to effectuate a prompt, fair and equitable settlement of their tort claims prior to trial. The Jefferson Circuit Court entered a summary judgment in favor of AFI and the Court of Appeals affirmed. We granted discretionary review primarily to consider whether the Unfair Claims Settlement Practices Act (the UCSPA), KRS 304.12–230, and/or the so-called tort of "bad faith" apply to persons or entities who are either self-insured or uninsured. We conclude that both the statute and the common law tort apply only to persons or entities engaged in the business of insurance; hence, we affirm.

■ AFI is an interstate motor carrier and had complied with the requirements of 49 U.S.C. § 31139(b) and (e), thus had qualified as a "self-insured" under federal law to the extent of its $250,000.00 deductible. However, it had not complied with KRS 304.39–080(7), thus had not qualified as a "self-insured" under Kentucky law. KRS 304.39–080(6). Nor was it a "liability self-insurance group" as defined in KRS 304.48–030 so as to fall within the parameters of the only unfair claims settlement practices statute specifically applicable to self-insureds. KRS 304.48–240(2). Nevertheless, Appellants characterize AFI as a "self-insured" or, alternatively, as "an uninsured," rather than "an insured with a $250,000.00 deductible," presumably because KRS 304.12–220 specifically provides that the UCSPA does not apply to "an insured."[1] Appellants conclude that since

---

1. Thus, "an insured" could not be sanctioned for, *e.g.,* misrepresenting the terms of his/her policy to a third-party claimant, or not attempting in good faith to effectuate a prompt,

"an insured" is the only "person" specifically excluded from the provisions of the UCSPA, a self-insured or uninsured person must *ipso facto* be subject to the statute. Under this theory, any person or entity who is either uninsured or self-insured would be held to the same standards of conduct with respect to the negotiation and settlement of tort liability claims as is an insurance company which is in the business of entering into contracts under which it is paid to assume the risk of liability for claims brought against the other contracting party. Thus, even an uninsured owner of a "mom-and-pop" grocery store who balks at (or is "bull-headed" about) paying his/her own money to settle a premises liability claim would be subject to punitive damages for committing an unfair claims settlement practice in violation of the UCSPA. We reject this view as contrary to the expressed intent of the legislature in enacting the Insurance Code, contrary to the interpretation placed upon the UCSPA by the administrative agency charged with its enforcement, contrary to our own well-established precedents, and contrary to the interpretation given to similar statutes by all other state courts which have considered the issue to date. Such an interpretation also would require us to declare the UCSPA unconstitutional as violative of Section 51 of our Constitution.

## I. KENTUCKY CONSTITUTION.

■ Section 51 of the Constitution of Kentucky provides: "No law enacted by the General Assembly shall relate to more than one subject, and that shall be expressed in the title . . . ." The UCSPA is entitled, "AN ACT relating to insurance,"[2] (not, *e.g.*, "AN ACT relating to persons"). If the statute related to both insurance and to persons who are not insured, it would violate Section 51 and would be unconstitutional. *E.g., McGuffey v. Hall*, Ky., 557 S.W.2d 401, 406–07 (1977) (statute entitled "AN ACT relating to health care

malpractice insurance and claims" could not constitutionally contain a provision pertaining to medical peer review boards); *Thompson v. Commonwealth*, 159 Ky. 8, 166 S.W. 623 (1914) (statute entitled "An Act to appropriate money for the benefit of the Houses of Reform, to provide funds to pay the existing deficit and to make improvements at the Houses of Reform" could not constitutionally contain provisions pertaining to inmates housed in the Houses of Reform). It is a well established principle of constitutional law and statutory construction that if a statute is reasonably susceptible to two constructions, one of which renders it unconstitutional, "the court must adopt the construction which sustains the constitutionality of the statute." *American Trucking Ass'n v. Commonwealth, Transp. Cabinet*, Ky., 676 S.W.2d 785, 789–90 (1984); *see also Commonwealth v. Halsell*, Ky., 934 S.W.2d 552, 554–55 (1996). Following this principle, we conclude that "AN ACT relating to insurance" pertains to insurance and not to persons or entities who are not insured.

## II. KENTUCKY STATUTORY SCHEME.

Regardless of the impact of Section 51, the UCSPA was clearly intended to regulate the conduct of insurance companies. KRS 304.12–230 is not a unique creature of Kentucky statutory law. It is an almost verbatim adoption of the 1971 version of the model act formulated by the National Association of Insurance Commissioners (NAIC) entitled "An Act Relating to Unfair Methods of Competition and Unfair and Deceptive Acts and Practices *in the Business of Insurance*." (Emphasis added.) *See State Farm Mut. Auto. Ins. Co. v. Reeder*, Ky., 763 S.W.2d 116, 118 (1988); M. Breen, *Bad Faith in Kentucky: A Primer*, at 37 (The Kentucky Academy of Trial Attorneys [undated]). The NAIC model act has been adopted in one form or

---

fair and equitable settlement with his/her insurer.

**2.** 1984 Ky. Acts ch. 171.

another in all fifty states and all territories of the United States. M. McFadden, *Insurance Benefits Under the ADA: Discrimination or Business as Usual?*, 28 Tort & Ins. L.J. 480, ___, n. 67 (1993).

KRS 304.12–230 provides as follows:

It is an unfair claims settlement practice for any person to commit or perform any of the following acts or omissions:

(1) Misrepresenting pertinent facts or *insurance policy provisions* relating to *coverages* at issue;

(2) Failing to acknowledge and act reasonably promptly upon communications with respect to *claims arising under insurance policies;*

(3) Failing to adopt and implement reasonable standards for the prompt investigation of *claims arising under insurance policies;*

(4) Refusing to pay claims without conducting a reasonable investigation based upon all available information;

(5) Failing to affirm or deny *coverage* of claims within a reasonable time after *proof of loss* statements have been completed;

(6) Not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear;

(7) Compelling *insureds* to institute litigation to recover amounts due under an *insurance policy* by offering substantially less than the amounts ultimately recovered in actions brought by such *insureds;*

(8) Attempting to settle a claim for less than the amount to which a reasonable man would have believed he was entitled by reference to written or printed advertising material accompanying or made part of an *application;*

(9) Attempting to settle claims on the basis of an *application* which was altered without notice to, or knowledge or consent of the *insured;*

(10) Making claims payments to *insureds* or beneficiaries not accompanied by statement setting forth the *coverage* under which the payments are being made;

(11) Making known ꞏ to *insureds* or claimants a policy of appealing from arbitration awards in favor of *insureds* or claimants for the purpose of compelling them to accept settlements or compromises less than the amount awarded in arbitration;

(12) Delaying the investigation or payment of claims by requiring an *insured,* claimant, or the physician of either to submit a preliminary claim report and then requiring the subsequent submission of formal *proof of loss* forms, both of which submissions contain substantially the same information;

(13) Failing to promptly settle claims, where liability has become reasonably clear, under one (1) portion of the *insurance policy coverage* in order to influence settlements under other portions of the *insurance policy coverage;* or

(14) Failing to promptly provide a reasonable explanation of the basis in the *insurance policy* in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement. (Emphasis added.)

█ Thus, of the fourteen sections of the UCSPA, only two, sections (4) and (6), do not contain specific language referring to insurance policies, applications therefor, insureds, coverages, and/or proof of loss forms. It would be absurd to suggest that the legislature intended that twelve of the fourteen sections of this statute would apply only to claims against insurance companies, but that the other two would apply to "everyman." Appellants, however, assert that the phrase "any person" contained in the first sentence of the statute relates back to the definition of "person" set forth in KRS 304.1–020, which they

interpret to include every person except "an insured" person.

KRS chapter 304 is entitled "Insurance Code." KRS 304.1–020 defines "person" as "an individual, insurer, company, association, organization, Lloyd's insurer, society, reciprocal insurer or inter-insurance exchange, partnership, syndicate, business trust or corporation, *and every other related legal entity*." (Emphasis added.) Obviously, this definition was intended to apply only to "an individual, etc." who is engaged in the business of insurance; otherwise, the last clause of the definition would be superfluous. The broad nature of the definition anticipates that even an individual who is not a licensed insurer might enter into "a *contract* whereby one undertakes to pay or indemnify another as to loss from certain specified contingencies or perils called 'risks,'" KRS 304.1–030 (definition of "insurance") (emphasis added), and thereby engage "in the *business of entering into contracts of insurance*." KRS 304.1–040 (definition of "insurer") (emphasis added). Nothing in any of these statutes evidences a legislative intent that the Kentucky Insurance Code was designed to regulate persons who are neither insured nor engaged in the business of entering into contracts of insurance.

The introductory section to the Insurance Code, KRS 304.1–010, provides that "[t]he General Assembly intends that each subtitle retain its separate identification within Chapter 304 of the Kentucky Revised Statutes." The UCSPA is in subtitle 12 of the Code, which is entitled "Trade Practices and Frauds." The introductory section to that subtitle, KRS 304.12–010, provides as follows:

> No person shall engage in this state in any practice which is prohibited in this subtitle, or which is defined therein as, or determined pursuant thereto to be, an unfair method of competition or any unfair or deceptive act or practice *in the business of insurance*. (Emphasis added.)

Although this section also uses the word "person," it is clear that the entire subtitle deals with unfair or deceptive trade practices "in the business of insurance." Virtually every section in subtitle 12 uses the word "person;" and in each instance that term is used to refer to either someone engaged in the business of insurance or someone attempting to undermine the business of insurance by means of defamation or restraint of trade. Nothing in subtitle 12 supports a conclusion that the legislature intended any of its provisions to apply to persons who are not engaged in or attempting to undermine the business of insurance.

### III. KENTUCKY ADMINISTRATIVE REGULATIONS.

Another elementary rule of statutory construction is that in the event of an ambiguity, controlling weight will be given to a long-standing interpretation given to the statute by the agency charged with its administration. *Hagan v. Farris*, Ky., 807 S.W.2d 488 (1991); *Barnes v. Department of Revenue*, Ky.App., 575 S.W.2d 169, 171 (1978). The Commissioner of the Department of Insurance is charged with adopting rules and regulations to aid in the effectuation of the provisions of the Insurance Code. KRS 304.2–110. To that purpose, the Commissioner has adopted 806 KAR 12:095 to implement the UCSPA. Section 2 of that regulation describes its scope and purpose as "to set forth minimum standards for the investigation and disposition of property and casualty insurance claims *arising under policies, certificates, and contracts*." (Emphasis added.) Without detailing every section of 806 KAR 12:095, suffice it to say that this comprehensive regulatory scheme applies only to insurance companies and their agents in the negotiation, settlement and payment of claims made against policies, certificates or contracts of insurance.

### IV. KENTUCKY CASE LAW.

With respect to whether a self-insured is in the business of insurance, the

case of *Reeves v. Wright & Taylor*, 310 Ky. 470, 220 S.W.2d 1007 (1949) is directly on point. Wright & Taylor owned a U–Drive–It business and had qualified as a self-insured under KRS 187.600. One of the issues in that case was "whether or not a person in the U–Drive–It business, by complying with KRS 187.600, is engaged in the insurance business and required to comply with the insurance laws of Kentucky." 220 S.W.2d at 1010. The Court held as follows:

> Clearly, the owner of the leased automobiles is not engaged in the insurance business when he procures a certificate of self-insurance from the Department of Revenue in lieu of a liability insurance policy. The certificate merely shows that he has produced evidence of financial responsibility.

*Id.*

Appellants attempt to avoid this longstanding precedent both by characterizing it as "old law" and attempting to distinguish it on its facts. The operative fact in that case was that the person sought to be charged was self-insured. The issue was whether a person who is self-insured is engaged in the business of insurance so as to be subject to the insurance laws of Kentucky. The holding was that he was not. "Old law" which has stood the test of time is often the "best law," especially when it is directly on point.

But if "new law" is desired, we need to look no further than *Wittmer v. Jones*, Ky., 864 S.W.2d 885 (1993), the leading case on "bad faith" in Kentucky. As summarized in *Motorists Mut. Ins. Co. v. Glass*, Ky., 996 S.W.2d 437, 451–52 (1997), Justice Leibson's opinion in *Wittmer* was the culmination of the development of "bad faith" liability in our jurisprudence. In *Manchester Ins. & Indem. Co. v. Grundy*, Ky., 531 S.W.2d 493 (1975), *cert. denied*,

429 U.S. 821, 97 S.Ct. 70, 50 L.Ed.2d 82 (1976), we had recognized a cause of action premised upon an insurer's bad faith refusal to settle a third-party liability claim which resulted in a verdict in excess of the insured's policy limits. In *Feathers v. State Farm Fire & Cas. Co.*, Ky.App., 667 S.W.2d 693 (1983), the Court of Appeals recognized a common law first-party bad faith claim premised upon an insurer's failure to settle a claim made by an insured under his/her own policy. *Feathers* was temporarily overruled by *Federal Kemper Ins. Co. v. Hornback*, Ky., 711 S.W.2d 844 (1986), but it was Justice Leibson's dissent in *Federal Kemper* which ultimately became the law as defined in *Wittmer*. When *Federal Kemper* was overruled in *Curry v. Fireman's Fund Ins. Co.*, Ky., 784 S.W.2d 176 (1989), the *Federal Kemper* dissent was specifically incorporated into that opinion. 784 S.W.2d at 178.

■ Meanwhile, we had also recognized two *statutory* bad faith causes of action, one a first-party action premised upon an insurer's violation of KRS 367.170, the Consumer Protection Act, *Stevens v. Motorists Mut. Ins. Co.*, Ky., 759 S.W.2d 819 (1988); and the other a third-party action premised upon a violation of the UCSPA, *State Farm Mut. Auto. Ins. Co. v. Reeder*, *supra*. Since the UCSPA does not specifically create a cause of action for damages for violation of its provisions,[3] the holding in *Reeder* was premised solely upon the provisions of KRS 446.070, *Reeder, supra*, at 117–18, which provides as follows:

> A person injured by the violation of any statute may recover from the offender such damages as he sustained by reason of the violation, although a penalty or forfeiture is imposed for such violation.

KRS 446.070 merely codifies the common law concept of negligence *per se*. It applies only if the alleged offender has

---

**3.** The 1989 amendment of the NAIC's model act added specific language that: "Nothing herein shall be construed to create or imply a private cause of action for a violation of this Act." 1989 NAIC Proc. II 204. This language

appears in the current versions of both the NAIC's model Unfair Trade Practices Act and its model Unfair Claims Settlement Practices Act.

violated a statute and the plaintiff was in the class of persons which that statute was intended to protect. *Hackney v. Fordson Coal Co.*, 230 Ky. 362, 19 S.W.2d 989 (1929). It follows that if the defendant was not in the class of persons whose conduct was intended to be regulated by the statute, the defendant could not violate the statute and KRS 446.070 simply would not apply. The issue here is whether AFI was within the class of persons whose conduct the UCSPA was intended to regulate. If not, KRS 446.070 does not create a cause of action in this case.

*Wittmer v. Jones, supra,* like *Reeder,* was a third-party claim premised upon a violation of the UCSPA. Writing for a unanimous Court in *Wittmer,* Justice Leibson gathered all of the bad faith liability theories under one roof and established a test applicable to all bad faith actions, whether brought by a first-party claimant or a third-party claimant, and whether premised upon common law theory or a statutory violation. *Wittmer, supra,* at 890. (As pointed out in Breen, *supra,* at 48, *Wittmer* thereby "subsumed" *Reeder* as precedent for third-party bad faith liability premised upon a violation of the UCSPA.) Quoting directly from his *Federal Kemper* dissent, Justice Leibson recited the three required elements of a cause of action for bad faith as follows:

> (1) *[T]he insurer must be obligated to pay the claim under the terms of the policy;* (2) the insurer must lack a reasonable basis in law or fact for denying the claim; and (3) it must be shown that the insurer either knew there was no reasonable basis for denying the claim or acted with reckless disregard for whether such a basis existed.

*Wittmer, supra,* at 890 (quoting *Federal Kemper, supra,* at 846–47 (Leibson, J., dissenting)) (emphasis added). As recognized in the *Federal Kemper* dissent, 711 S.W.2d at 847, this is essentially a restatement of the holding in *Feathers v. State Farm Fire & Cas. Co., supra,* that a cause of action for bad faith arises out of a *breach of contract* "so great that it would constitute tortious conduct on the part of the insurance company." 667 S.W.2d at 696.

■ The gravamen of the UCSPA is that an insurance company is required to deal in good faith with a claimant, whether an insured or a third-party, with respect to a claim which the insurance company is *contractually obligated* to pay. Absent a contractual obligation, there simply is no bad faith cause of action, either at common law or by statute. In the case at bar, AFI was under no contractual obligation to pay the Davidsons' claims; thus, there exists no statutory or common law basis for a bad faith claim against it. Just like the "mom-and-pop" store owner, AFI had the same rights as any American citizen to dispute the Davidsons' claims, even to the point of "bullheadedness," and to take that dispute to court.

## V. FOREIGN CASE LAW.

Few state courts have addressed this issue, primarily because the NAIC, which promulgated the model act, has made it clear that the UCSPA was not intended to create a cause of action for private citizens even against insurance companies, much less self-insured or uninsured persons or entities.[4] However, those courts which have published opinions on the issue have all held that the UCSPA does not apply to a self-insured person or entity.

In *Richardson v. GAB Business Servs., Inc.,* 161 Cal.App.3d 519, 207 Cal.Rptr. 519 (1984), Safeway Stores, Inc., like AFI in our case, had a policy of liability insurance with a deductible which exceeded the premises liability claim brought against it. Thus, Safeway investigated, negotiated and litigated the claim with its own money. The plaintiff claimed, as the Davidsons do here, that by doing so, Safeway had subjected itself to California's version of the

---

4. *See* note 3, *supra.*

UCSPA. Cal. Ins.Code § 790.03(h). The court held otherwise.

It is apparent on the face of the complaint that there is no insurance contract and no insurance company involved in this case. The allegation of self-insurance, which is equivalent to no insurance, is repugnant to the concept of insurance which fundamentally involves the shifting to a third party, by contract, for a consideration, the risk of loss as a result of an incident or event. In the instant case the liability for the injury to plaintiff was shifted to no one. It remained with Safeway, the very entity that caused the injury.

. . .

Section 790.03 merely enumerates those practices which are actionable and extends the cause of action to third party claimants, such as a third party's tort claim against a liability insurance carrier for a tortfeasor. Thus, the insurance contract itself is the basis for holding insurance companies and those engaged "in the business of insurance" to a higher standard when negotiating and settling claims.

Plaintiff makes the novel argument that because of the size of Safeway and the fact it regularly and significantly adjusts its own liability claims, it is "engaged in the business of insurance." We know of no authority holding that whether one is engaged in the business of insurance depends upon the number of claims that are adjusted.

207 Cal.Rptr. at 521–22.

In *Ogden v. Montana Power Co.*, 229 Mont. 387, 747 P.2d 201 (1987), the defendant utility company ("MPC") was self-insured and the plaintiff asserted a bad faith claim against it under Montana's version of the UCSPA. Mont.Code Ann. § 33–18–101, *et seq.* That state's highest court rejected the notion that the statute could apply to a self-insured entity.

The Montana Insurance Code's Unfair Trade Practices Act does not apply to a self-insured entity like MPC. The legislature enacted the Montana Insurance Code, Title 33, MCA, to govern and regulate the business of insurance. The Unfair Trade Practices Act, Section 33–18–101[,] et seq., MCA, as a part of the Montana Insurance Code and by virtue of its own stated purpose was enacted to govern and regulate trade practices in the business of insurance.

. . .

MPC is primarily in the business of providing power and utilities to customers, although it insures itself. The legislature did not intend a self-insured entity to be subject to all the technical Montana insurance industry regulations.

747 P.2d at 204–05; *see also Martel v. Montana Power Co.*, 231 Mont. 96, 752 P.2d 140, 147–48 (1988).

In *Kitchell v. Public Serv. Co. of New Mexico*, 126 N.M. 525, 972 P.2d 344 (1998), the issue was whether the employer ("PNM"), which was self-insured for workers' compensation purposes, could be subjected to a bad faith action under New Mexico's version of the UCSPA.[5] N.M. Stat. Ann. § 59A–16–1, *et seq.* Citing *Richardson v. GAB Business Servs., Inc.*, *supra*, the court held that the statute did not apply to a self-insured entity.

The person suffering the injury has a workers' compensation claim or a personal injury claim, not an insurance claim. Therefore, PNM was not an insurer of Kitchell merely because it could be liable as an employer for the payment of compensation.

*Kitchell*, 972 P.2d at 347.

*See generally* L. Russ and T. Segalla, *Couch on Insurance* § 4:21 (3d ed. West 1997–99).

---

**5.** The exclusive remedy provision of Kentucky's Workers' Compensation Act, KRS 342.690, precludes any bad faith tort claim against even a workers' compensation *insurer.*

*Zurich Ins. Co. v. Mitchell*, Ky., 712 S.W.2d 340, 343 (1986); *General Accident Ins. Co. v. Blank*, Ky.App., 873 S.W.2d 580 (1993).

## VI. CONCLUSION.

Tort liability for bad faith has its genesis in the principle that every *contract* has an implied covenant that requires the insurer to deal with its policyholders with the utmost good faith, and to deal with them fairly. Put otherwise, the insurer, who is the second party to the *contract*, owes the insured (the first party) equal consideration in all respects. Breen, *supra*, at 28 (emphasis added).

 "[The] UCSPA comprises a prohibited set of *insurance* practices that historically arose in the property and casualty setting...." *Id.* at 50 (emphasis added). The UCSPA has no application to an uninsured entity under no contractual obligation to pay the tort claim of another. As did the Montana Supreme Court in *Ogden v. Montana Power Co., supra*, at 204–05, we conclude that our legislature did not intend to subject self-insured or uninsured persons or entities to the technical requirements of the Kentucky Insurance Code and its attendant regulations; and we thus hold that the UCSPA and the tort of "bad faith" apply only to those persons or entities (and their agents) who are "engaged ... in the business of entering into contracts of insurance." KRS 304.1–040.

Accordingly, the decisions of the Court of Appeals and the Jefferson Circuit Court are affirmed.

GRAVES, JOHNSTONE and KELLER, JJ., concur.

WINTERSHEIMER, J., dissents by separate opinion, with LAMBERT, C.J., and STUMBO, J., joining that dissent.

WINTERSHEIMER, Justice, dissenting.

I must respectfully dissent from the majority opinion because the Unfair Claims Settlement Practices Act and the tort of bad faith apply to persons and entities who are self-insured or uninsured.

The principal issue here is whether a self-insured company that engages in claims adjusting and settlement is liable for a statutory bad faith claim under the Unfair Claims Settlement Practices Act, codified by KRS 304.12–230.

The constitutional analysis of the majority opinion is unnecessary and begs the question. The simple reason the legislature enacted the Unfair Claims Settlement Practices Act was to prevent fraud and deception in settlement by any person or entity. The majority opinion turns a blind eye to the reality that trucking, insurance and fair settlement practices are inexorably intertwined. The law should recognize the conditions of modern society.

When the lawsuit was originally filed, American Freightways, an Arkansas based interstate trucking company, took the position that it was only 60 percent liable even though its own driver admitted liability. The circuit court award was substantially more than the settlement amount offered by American Freightways prior to trial. The Davidsons then filed a bad faith action against American Freightways claiming that they acted as a self-insured. The Davidsons argued that American Freightways, as a self-insured, was prohibited from engaging in any unfair settlement practice pursuant to KRS 304.12–230, the Unfair Claims Settlement Practices Act, and under KRS 304.48–240(2), entitled Prohibited Activity for Liability Self Insurance Groups. The trial judge concluded that American Freightways was not a self-insurer and granted it summary judgment on the question of bad faith. The Court of Appeals affirmed, but for different reasons, and held that American Freightways was self-insured but that the Act did not apply to self-insureds when there was no contract of insurance on which to base a claim of bad faith. This Court accepted discretionary review.

The Davidsons argue that the General Assembly has declared the public policy of Kentucky to be that the Unfair Claims Settlement Practices Act applies to self-insureds. They contend that applying the

Act to self-insureds is consistent with the strong constitutional and judicial traditions recognizing the right of individual redress.

American Freightways responds that a bad faith action is untenable in the absence of an insurance contract. They maintain that they owe no fiduciary duty to the Davidsons and that the principles of statutory construction preclude the application of the Unfair Claims Settlement Practices Act to bad faith actions brought against self-insureds such as themselves.

American Freightways conceded that with respect to this claim it acts as a self-insured and that it was without insurance coverage applicable to the claim. American Freightways did have a policy of commercial insurance with Protective Insurance Company which had a $250,000 per occurrence deductible. American Freightways states that at no time during the trial or appeal was it ever even suggested that they were not in full compliance with federal statutes which specifically regulate the issue here: Federal motor carriers ability to address claims arising out of their involvement in interstate commerce. It contends that 49 U.S.C. 31139(b) and (e), which require Federal motor carriers such as American Freightways to provide evidence of financial responsibility to withstand claims up to $750,000, addresses precisely that issue.

As the Court of Appeals correctly notes in its majority opinion, self-insurance is defined as "the practice of setting aside a fund to meet losses instead of insuring against such through insurance. A common practice of business is to self-insure up to a certain amount and then cover any excess with insurance. This common business practice is clearly the manner in which American Freightways operates and was admitted by the company in its affidavits and legal pleadings. The Court of Appeals found that American Freightways was self-insured and that it failed to comply with the Motor Vehicle Reparations Act so as to be a "secured" person. There

was no cross-motion for discretionary review challenging this finding.

American Freightways is a self-insured even though it did not file the proper papers in Kentucky to be a self-insured. Simply by failing to file and ignoring the proper procedure, American Freightways cannot ignore the MVRA laws and relieve itself of the responsibility of complying with unfair claims settlement practices. The affidavit of the Director of Property and Casualty Claims of American Freightways states that "American Freightways acted as a self-insured in that it was without insurance coverage applicable to the claims of the Davidson" An additional affidavit of the manager of the property and casualty claims of American Freightways stated that all claims below the amount of $250,000 were handled by the company who investigates, adjusts and makes settlement decisions with respect to any claims within the self-retention amount.

American Freightways is not part of a self-insurance group, within the statutory meaning of MVRA. KRS 304.48–240 has no application in this matter. However, KRS 304.39–080 of the MVRA provides that every owner of a motor vehicle shall continuously provide security for the payment of basic reparations benefits and security for payment of tort liabilities. "The owner of a motor vehicle who fails to maintain security on a motor vehicle pursuant to this subsection of the statute shall have his or her operator's license suspended. The statute further provides that security may be provided by a contract of insurance or by qualifying as a "self-insurer"

In order to qualify as a self-insurer, the owner must file in satisfactory form with the Commissioner of Insurance: 1) a continuing undertaking to pay tort liabilities or basic reparations benefits; 2) evidence of prompt and efficient administration of all claims, benefits and obligations; and 3) evidence of reliable financial arrangements substantially equivalent to an insurance policy.

American Freightways did not obtain an insurance policy for the first $250,000 of any claims and did not comply with the laws governing the method of becoming a self-insured for purposes of the MVRA. Accordingly, American Freightways has failed to maintain security on its motor vehicle pursuant to the statutory requirements of MVRA.

This Court recognized the right of a private individual to maintain an action for a violation of the Unfair Claims Settlement Practices Act codified in KRS 304.12–230 in *State Farm Mutual Automobile Insurance Co. v. Reeder*, Ky., 763 S.W.2d 116 (1989). *Reeder, supra*, stated that the Unfair Claims Settlement Practices Act was intended to protect the public from unfair trade practices and fraud, and that the Act should be liberally construed so as to effectuate its purpose. *See* KRS 446.080 and *DeHart v. Gray*, Ky., 245 S.W.2d 434 (1952). The case presented here relies on the statutory authority found in KRS 446.080.

KRS 304.12–230 makes no distinction between insurance companies and self-insureds. Person is defined in KRS 304.1–020 as

> [A]n individual, insurer, company, association, organization, Lloyd's insurer, society, reciprocal insurer or inter-insurance exchange, partnership, syndicate, business trust or corporation, and every other related entity.

Obviously, this is very broad language and unless an entity is specifically excluded, it is included. In this situation, American Freightways cannot cite such a statutory exclusion that would protect it from liability under the Unfair Claims Settlement Practices Act. The legislature has determined that the Act applies to all persons, not just insurance companies.

*Reeves v. Wright & Taylor*, 310 Ky. 470, 220 S.W.2d 1007 (1949), does not support the position of American Freightways, Inc. *Reeves, supra*, was determined long before the Commonwealth adopted the Unfair Claims Settlement Practices Act and it is distinguishable and it must be placed within the context of the facts in that case. The issue in *Reeves* was whether an automobile leasing company was involved in the business of insurance when it elected to become self-insured. Specific provisions for that option had been provided for within the then new statute. The leasing company maintained that it was not able to find insurance coverage as required by the statute, thus it became self-insured as a result of absolute necessity. The leasing company was not a large business and did not have an entire department dedicated to investigating, negotiating or settling claims. The opinion in *Reeves* indicated that the issue had been abandoned in the briefing stage. Nevertheless, the court elected to speak to the point without the benefit of briefs or oral argument on the subject. It is obvious that the business of automobile insurance and the statutes relating to negotiating claims have undergone drastic revisions in the 50 years since the *Reeves* opinion was rendered in 1949. The comments of the Court made in *Reeves* are not valid precedent on which the majority can rely.

The majority opinion notes *Richardson v. GAB Business Services, Inc.*, 161 Cal. App.3d 519, 207 Cal.Rptr. 519 (5th Dist. 1984). An analysis of that case indicates that in California, the only entity that can bring or maintain a bad faith action is the insurance commissioner. In Kentucky, an individual is allowed to pursue a bad faith claim. We find the California case inappropriate when we compare the California approach to the Kentucky approach. The act in question is a creature of Kentucky statutory law. We find the other foreign citation equally unconvincing.

The panel of the Court of Appeals which considered this case was concerned about imposing liability for bad faith claims absent an insurance contract. However, *Reeder* specifically states that statutory bad faith is a creature of statute and there is no similar cause of action found at com-

mon law. KRS 304.12–220 specifically excludes an insured from the term *person* as it applies to KRS 304.12–230. Consequently, individual policyholders are specifically exempted from liability under the Unfair Claims Settlement Practices Act.

American Freightways has its own Property and Casualty Claims Department, with a director, adjusters and investigators. It conducts negotiations with claimants. Decisions on settlements are made within the department as long as the claims are within the deductible/self-retention sum of less than $250,000. The claims department took the position that American Freightways was not totally responsible for the accident but only 60 percent liable. It is obvious that these activities are those which an insurance company regularly performs. The company acknowledges that it acted as a self-insured, however, it argues that this is not the same as being self-insured. The company maintains that the Davidsons simply cannot get around the absence of an insurance contract. We must strongly disagree.

The term *self-insured* is somewhat misleading. American Freightways is more accurately a *self-insurer*. It has chosen to act as its own insurance company, insuring itself. Consequently, it must have the same obligations as those of an insurer. One cannot avoid compliance with the same laws which apply to insurance companies when, in a legitimate move to save money, it acts as its own insurer. The MVRA in KRS 304.39–080 speaks of the mandatory vehicular insurance laws and recognizes that self-insurers must handle claims like insurers. This is not a "Mom and Pop" operation.

The legislature has expressed a clear intent that motor vehicle operators who do not purchase contracts of insurance must provide for prompt and efficient administration of claims and obligations. The purchase of an insurance policy by an ordinary motorist does not automatically create an obligation to comply with the Unfair Claims Practices Act. It delegates such responsibility to the insurance company. A self-insurer, such as American Freightways is not an insured. They have not obtained a legally recognized insurance policy and thus have not shifted the obligation in the Unfair Claims Practices Act to an insurance company. Clearly, they have chosen to create a self-insurance program by establishing the necessary financial reserves to pay losses and to hire employees to handle the administration of such claims. Consequently, they are liable under the Act because they fit the definition of *person*. KRS 304.1–020.

The General Assembly intended for the Act to apply to everyone with one specific exception. It does not apply to insureds. KRS 304.12–220 provides this very narrow exception to the words *any person*. As expressed in this statute, person shall not mean an insured.

If the legislature had desired that the Act was to apply only to insurance companies, then it surely would have used the word *insurer*, which by definition includes "every person engaged as principal and as indemnitor, surety or contractor in the business of entering into contracts of insurance." KRS 304.1–040. It did not.

As stated in *Reeder* this Act is a statutory cause of action and not founded in common law. The Act contains no insurance policy requirement. The authorities presented by American Freightways do not relate to statutory bad faith in the context of an enabling statute such as KRS 446.070 or the broadly worded definition of person found in KRS 304.1–020. Although there may be some cases from other states which have individual applications and interpretations based on the statutes of those other states, we reassert the policy expressed in *Reeder* that, "Our decision must be based on the language of Kentucky law."

The argument that the Act applies only to entities engaged in "the business of insurance" is totally without merit. This phrase contained in KRS 304.12–010 is an

additional prohibition and not a restriction on the application of KRS 304.12–230. The Unfair Claims Settlement Practices Act does not contain the phrase "in the business of insurance." If the legislature had intended a restriction on the Act, it would have included such language. It did not. The word *person* stands alone.

There is a significant difference between a single individual and an interstate business. American Freightways, by handling its own claims and insuring itself for the first $250,000 of any loss, is in the business of insurance. Any company that has its own claims department to handle risks up to $250,000 cannot deny that it is in the business of insurance within the meaning of the Kentucky Insurance Code and subtitle 12. Although American Freightway's principal business is trucking, it is clear that it has a significant subsidiary component to its activities which is the business of insuring itself. Again, this is not a "Mom and Pop" operation.

I would reverse the decision of the Court of Appeals and reinstate the claim of bad faith.

LAMBERT, C.J., and STUMBO, J., join this dissent.