**Dave CLARK Plaintiff**

v.

**Commonwealth of KENTUCKY, et al. Defendants**

**No. CIV.A.02–165–KSF.**

United States District Court, E.D. Kentucky.

Oct. 29, 2002.

Edward E. Dove, Lexington, KY, for Dave Clark, plaintiff.

Douglas L. McSwain, Charles David Cole, Sturgill, Turner, Barker & Maloney, PLLC, Lexington, KY, for Commonwealth of Kentucky, Dept. of Alcohol Beverage Control, Richard Johnstone, Loren T. Wells.

Dave Whalen, David P. Bowles, Landrum & Shouse, Louisville, KY, for Loren T. Wells.

## OPINION & ORDER

FORESTER, Chief Judge.

This matter is before the Court on the motion to dismiss of defendants (1) Commonwealth of Kentucky; (2) Department of Alcohol Beverage Control; (3) Richard Johnstone, in his official capacity as Commissioner, Department of Alcohol Beverage Control and in his individual capacity; and (4) Loren Wells, in his official capacity as an Alcohol Beverage Control Officer [DE # 4], and the motion to dismiss of defendant Wells in his individual capacity [DE # 9].

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The following facts are taken from the plaintiff's complaint, originally filed in Madison County, Kentucky, Circuit Court. The plaintiff owns a business located in Richmond, Kentucky. Defendant Wells, an officer of the Department of Alcohol Beverage Control ("ABC"), entered the plaintiff's business on or about March 14, 2001, to leave some papers at the business. According to the plaintiff, Defendant Wells launched into a belligerent tirade while at the plaintiff's business directed at the plaintiff and his employees. At no time during this incident did defendant Wells identify himself as an officer of the ABC or provide any identification to the plaintiff or his employees. The tirade culminated in defendant Wells grabbing the plaintiff, placing him on the ground, and handcuffing his hands behind his back.

Defendant Wells then called the City of Richmond Police Department. Upon the officers' arrival, they arrested the plaintiff.[1] At that time, the plaintiff was not read his *Miranda* rights and was not informed of the charges against him, but was subsequently charged with misdemeanor disorderly conduct, menacing, and resisting arrest. Those charges are still pending in the Madison County, Kentucky, District Court.

Thereafter, the plaintiff filed suit in state court alleging § 1983 violations and several violations of Kentucky state law. In his suit, he seeks only damages and no prospective injunctive relief. The defen-

---

1. The City of Richmond is not a party to this action.

dant timely removed the action to this Court based upon the federal questions raised in the plaintiff's complaint and filed the motions to dismiss now under consideration.

## II. STANDARD

It is well established that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The Court shall construe the pleading liberally and take all well-pleaded facts as true. *Swanson v. Bixler,* 750 F.2d 810, 813 (10th Cir.1984). In short, the issue when considering a motion to dismiss is not whether plaintiff will ultimately prevail, but rather, whether plaintiff is entitled to offer evidence in support of his claims.

## III. PLAINTIFF'S § 1983 CLAIM

The Court will first address the motion to dismiss of defendants Commonwealth of Kentucky, the Department of ABC, defendant Johnstone in his official capacity, defendant Johnstone in his individual capacity, and defendant Wells in his official capacity.[2] Further, the court will first consider the plaintiff's federal claim—the § 1983 claim—before considering the state claims raised in the complaint.

### A. *Defendants Johnstone and Wells in Their Official Capacities*

■ The plaintiff has filed a § 1983 claim for damages against defendants Johnstone and Wells in their official capacities as Commissioner and Officer of the Department of ABC, respectively. As explained by the United States Supreme

Court in *Kentucky v. Graham,* 473 U.S. 159, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985),

[p]ersonal capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law.... Official-capacity suits, in contrast, "generally represent only another way of pleading an action against an entity of which an officer is an agent." ... As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.... It is not a suit against the official personally, for the real party in interest is the entity. Thus, while an award of damages against an official in his personal capacity can be executed only against the official's personal assets, a plaintiff seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself.

*Id.* at 165–66, 105 S.Ct. 3099; *see also Will v. Michigan Dep't of State Police,* 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989) ("[A] suit against a state official in his or her official capacity ..... is no different from a suit against the State itself."). The Supreme Court further noted in *Graham* that an official in an individual-capacity suit may assert the personal immunity defense of qualified immunity, but the only immunities available in an official-capacity suit are those that the entity may possess, such as sovereign immunity or immunity under the Eleventh Amendment. *Graham,* 473 U.S. at 167, 105 S.Ct. 3099.

■ In the present action, because the plaintiff seeks only damages and not prospective injunctive relief against these official-capacity defendants for the alleged violation of his rights, his official-capacity

2. For ease of reference, the Court will collectively refer to all of these defendants except

defendant Johnstone in his individual capacity as the "Official Defendants."

claims are deemed to be against the Commonwealth of Kentucky. *Doe v. Wigginton,* 21 F.3d 733, 736–37 (6th Cir.1994). Accordingly, claims against defendants Johnstone and Wells, in their official capacities, will be dismissed. This leaves the following as defendants with respect to the plaintiff's § 1983 claim: (1) the Commonwealth of Kentucky and the Department of ABC;[3] (2) defendant Johnstone in his individual capacity; and (3) defendant Wells in his individual capacity.

### B. Commonwealth of Kentucky

■ The next question is whether the plaintiff may maintain an action for damages under § 1983 against the Commonwealth of Kentucky and the Department of ABC. The law is well-settled that, unlike a local government, a state (including state officials in their official capacities) cannot be sued for damages under § 1983 in either state or federal court. As to suit in federal courts, the Eleventh Amendment shields a state from such unless the state consents to suit or waives its immunity. The United States Supreme Court held in *Quern v. Jordan,* 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979), that Congress did not abrogate the states' Eleventh Amendment immunity in passing § 1983:

> [N]either logic, the circumstances surrounding the adoption of the Fourteenth Amendment, nor the legislative history of the 1871 Act [§ 1983] compels, or even warrants, ... the conclusion that Congress intended by the general language of the Act to overturn the constitutionally guaranteed immunity of the several States.

*Id.* at 342, 99 S.Ct. 1139 (citation omitted); *see also Johnson v. University of Cincin-*

*nati,* 215 F.3d 561, 571 (6th Cir.2000) (citing *Quern* for the proposition "that § 1983 does not override a State's Eleventh Amendment immunity"), *cert. denied,* 531 U.S. 1052, 121 S.Ct. 657, 148 L.Ed.2d 560 (2000).

■ With respect to § 1983 claims for retrospective relief (i.e., damages) brought against states (or state officials in their official capacities) in *state* courts, where the Eleventh Amendment has no applicability, the United States Supreme Court held in *Will v. Michigan Dep't of State Police,* 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989), that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983."[4] Accordingly, the plaintiff cannot maintain his § 1983 claim for damages against the Commonwealth of Kentucky and the Department of ABC and this claim will be dismissed. Thus, the only remaining parties to plaintiff's § 1983 damages claim are defendants Johnstone and Wells in their individual capacities.

### C. Defendant Johnstone in His Individual Capacity

The defendants argue that the plaintiff's § 1983 claim against defendant Johnstone individually should be dismissed because the plaintiff makes no specific factual allegations in the complaint as to defendant Johnstone. The plaintiff counters that a question to be answered in this matter is one of training of ABC officers—if this training was inadequate, defendant Johnstone may be liable if the failure to train amounted to deliberate indifference.

---

**3.** Similarly, the Department of ABC is simply an agency of the Commonwealth of Kentucky. Therefore, a suit against the Department is essentially a suit against the Commonwealth.

**4.** However, state officials sued in their *individual* capacities *are* "persons" for purposes of § 1983 and are not protected from suit by the Eleventh Amendment. *See Hafer v. Melo,* 502 U.S. 21, 27, 30–31, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991).

With respect to the § 1983 claims against defendant Johnstone, the following are the extent of the allegations contained in the complaint:

- Defendant Johnstone is Commissioner of the Department of ABC, whose duties include training and supervision of ABC officers. (Compl.¶ 5.)
- "The Defendant, Richard Johnstone[,] is responsible for the training of his staff. He is also responsible for the acts of his control officers." (*Id.* ¶ 18.)

While the plaintiff does not directly allege that defendant Johnstone failed to adequately train his officers, construing the plaintiff's complaint liberally, the plaintiff appears to allege that defendant Johnstone failed to adequately train defendant Wells and that this caused the plaintiff's injuries. He also appears to be asserting that defendant Johnstone, as defendant Wells's supervisor, is directly responsible for the acts of defendant Wells. However, there are no allegations that defendant Johnstone personally participated in the events of March 14, 2001.

■ Where a plaintiff seeks to hold someone individually liable for constitutional injury directly caused by someone else, the court must apply standards regarding supervisory liability. *Doe, ex rel. Doe. v. City of Roseville,* 296 F.3d 431, 439 (6th Cir.2002) (citing *Doe v. Claiborne County, Tenn.,* 103 F.3d 495, 513 (6th Cir. 1996)). Section 1983 liability must be based on something more than *respondeat superior* (i.e., the right to control the employee), however. In *Hays v. Jefferson County, Ky.,* 668 F.2d 869, 874 (6th Cir. 1982), the Sixth Circuit set forth the following standard:

The result of *Rizzo* and subsequent cases in the lower federal courts applying the standards it announced is that a failure of a supervisory official to supervise, control, or train the offending individual officers is not actionable absent a showing that the official either encouraged the specific incident of misconduct or in some other way directly participated in it. At a minimum a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers.

*Id.* "[L]iability under § 1983 must be based on active unconstitutional behavior and cannot be based upon 'a mere failure to act.'" *Shehee v. Luttrell,* 199 F.3d 295, 300 (6th Cir.1999) (citation omitted). With respect to a claim for failure to train, the Sixth Circuit has held that "a supervisory official ... may be held liable only where there is essentially a complete failure to train the [officers], or training that is so reckless or grossly negligent that future ... misconduct is almost inevitable... or would properly be characterized as substantially certain to result ...." *Hays,* 668 F.2d at 874 (citations omitted).

Turning to the present case, there is no allegation in the plaintiff's complaint that defendant Johnstone "either encouraged the specific incident of misconduct or in some other way directly participated in it." At most, there is an allegation that he failed to properly train defendant Wells. Accordingly, defendant Johnstone may not be held personally liable for the actions of defendant Wells based solely on the fact that he was Wells's supervisor—i.e., based on *respondeat superior.* To the extent that the plaintiff's § 1983 claim is based on *respondeat superior,* it will be dismissed.

■ However, the plaintiff has also asserted that defendant Johnstone failed to adequately train defendant Wells and argues that the question of the adequacy of Wells's training is a question of fact that should at the very least be subject to discovery, pursuant to *Hays.* The Court agrees that this is a question that cannot be answered at this stage of the proceed-

ings. Because no discovery has been taken, there is no information in the record regarding what, if any, training was required of ABC officers. The plaintiff must be given the opportunity for discovery and prove that there was either a complete failure to train the officers, or training that was so reckless or grossly negligent that future misconduct was almost inevitable or would be characterized as substantially certain to result. *Id.* Therefore, the Court will deny the defendants' motion on the § 1983 failure-to-train claim, which may go forward at this time.

### D. *Defendant Wells in his Individual Capacity*

In a separate motion to dismiss, defendant Wells asserts that the plaintiff's § 1983 claim against him should be dismissed because criminal charges against the plaintiff are still pending, relying primarily on *Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), and *Callihan v. Schneider*, 178 F.3d 800 (6th Cir.1999). The Official Defendants respond that they agree, but argue that the Court should decide their motion first and dismiss those defendants for whom dismissal is now appropriate, notwithstanding the pending criminal charges against the plaintiff.

The plaintiff responds that his § 1983 claim against defendant Wells is one for excessive force and will survive regardless of the outcome of the state court criminal action against him, as an excessive force claim does not require a finding of "not guilty" on the underlying charges. Rather, whether excessive force was used is a separate fact question to be decided by a jury. Further, the one-year statute of limitations for the plaintiff's § 1983 claim began to run when he knew or should have known of the constitutional violation. In this case, that occurred on March 14, 2001. Therefore, the plaintiff was required to file his complaint when he did.

In *Heck*, the specific question presented was "whether a state prisoner may challenge the constitutionality of his conviction in a suit for damages under 42 U.S.C. § 1983." *Heck*, 512 U.S. at 478, 114 S.Ct. 2364. The bases for Heck's challenge to his conviction for voluntary manslaughter were that state officials had engaged in an unlawful investigation, had knowingly destroyed evidence, and had caused an unlawful voice identification procedure to be used at trial. In its opinion, the United States Supreme Court provided the following analysis to be applied not only to Heck's particular case, but also to a broad range of § 1983 claims:

> We hold that, in order to recover damages for allegedly unconstitutional conviction or imprisonment, *or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid,* a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, *the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence;* if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. But if the district court determines that the plaintiff's action, even if successful, will not demonstrate the invalidity of any out-

standing criminal judgment against the plaintiff, the action should be allowed to proceed, **in the absence of some other bar to the suit.**

*Id.* at 486–87, 114 S.Ct. 2364 (footnotes omitted) (emphases supplied). As an example of some "other harm caused by actions whose unlawfulness would render a conviction or sentence invalid," the Supreme Court provided the following:

An example of this latter category-a § 1983 action that does not seek damages directly attributable to conviction or confinement but whose successful prosecution would necessarily imply that the plaintiff's criminal conviction was wrongful-would be the following: A state defendant is convicted of and sentenced for the crime of *resisting arrest,* defined as intentionally preventing a peace officer from effecting a lawful arrest. (This is a common definition of that offense. *See People v. Peacock,* 68 N.Y.2d 675, 505 N.Y.S.2d 594, 496 N.E.2d 683 (1986); 4 C. Torcia, *Wharton's Criminal Law* §§ 593, p. 307 (14th ed.1981).) He then brings a § 1983 action against the arresting officer, seeking damages for violation of his Fourth Amendment right to be free from unreasonable seizures. In order to prevail in this § 1983 action, he would have to negate an element of the offense of which he has been convicted. Regardless of the state law concerning res judicata, *see* n. 2, *supra,* the § 1983 action will not lie.

*Id.* at 487 n. 6, 114 S.Ct. 2364 (emphasis added).

In the present case, the plaintiff is not directly challenging the constitutionality of a conviction or imprisonment, but is seeking damages "for other harm caused by actions whose unlawfulness" *might* render a conviction or sentence invalid. Thus, the basic question to be determined by the Court is whether a judgment in favor of the plaintiff on his § 1983 claim would necessarily imply the invalidity of his possible state conviction(s) or sentence. If the answer is no, then the plaintiff may go forward with his § 1983 claim. However, if the answer is yes, then the Court must either dismiss the claim without prejudice or stay this action [5] unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

■ A broad reading of the complaint indicates that the bases of the plaintiff's § 1983 claim against defendant Wells are the following: (1) unlawful seizure of his person; (2) violation of his substantive due process rights; (3) the use of unjustified and excessive force in effecting the arrest; and (4) lack of probable cause for the arrest. As to his claim of unlawful seizure, it appears under *Heck* that the plaintiff's § 1983 claim against defendant Wells should not be permitted to go forward at this time, due to the pending charge of resisting arrest; this situation is identical to the example provided by the United States Supreme Court in *Heck* and outlined above. Likewise, the plaintiff's claims for violation of substantive due process and lack of probable cause, both of which challenge the legality of his arrest, would also necessarily imply the invalidity of any state conviction on the pending charges. Therefore, any § 1983 claim based upon these theories cannot lie until such time as the plaintiff demonstrates that any such conviction has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's

**5.** In *Heck,* the United States Supreme Court noted that "abstention may be an appropriate response to the parallel state-court proceedings." *Heck,* 512 U.S. at 487 n. 8, 114 S.Ct. 2364.

issuance of a writ of habeas corpus. Accordingly, these claims will be dismissed without prejudice at this time.

With respect to his claim of excessive force, the Court must ask the same question: will a judgment in favor of the plaintiff on his § 1983 claim necessarily imply the invalidity of his possible state conviction or sentence? None of the cases relied upon by the defendant directly answers this question, as none involves a plaintiff making a claim of excessive force. For example, the plaintiff's claims in *Callihan* were more akin to malicious prosecution claims. Likewise, the plaintiff in *Heck* challenged the constitutionality of his state sentence, but not based upon excessive force. In *Ruff v. Runyon*, 258 F.3d 498 (6th Cir.2001), the § 1983 plaintiffs filed claims for malicious prosecution, abuse of process, negligent and intentional infliction of emotion distress, but not use of excessive force in an arrest. *Id.* at 500. In *Schilling v. White*, 58 F.3d 1081 (6th Cir. 1995), the plaintiff claimed a violation of his Fourth Amendment rights, but not based on excessive force.

■ The Court concludes that a finding in favor of the plaintiff on his § 1983 claims for use of excessive force would not necessarily imply the invalidity of a conviction for resisting arrest, menacing, or disorderly conduct. At the current stage of the proceedings, the plaintiff has not admitted to any conduct (by way of a guilty plea or otherwise) that would justify the alleged use of force by defendant Wells. In Kentucky, the offense of resisting arrest does not require a showing that the arrest was lawful.[6] Neither do the menacing nor disorderly conduct charges.[7] The plaintiff could be convicted of all three state criminal charges and still succeed on an excessive force claim *without* invalidating the convictions. Therefore, the holding of *Heck* does not require the dismissal at this time of the plaintiff's § 1983 claim based upon the use of excessive force.

## IV. PLAINTIFF'S STATE CLAIMS

### A. State Claims Against the Official Defendants in Count 2

In Count 2, the plaintiff alleges in his complaint that the defendants have violated §§ 2 and 10 of the Kentucky Constitution. Section 2 of the Kentucky Constitution states that "[a]bsolute and arbitrary power over the lives, liberty and property of freemen exists nowhere in a republic, not even in the largest majority." Section 10 states that "[t]he people shall be secure in their persons, houses, papers and possessions, from unreasonable search and seizure . . . ."

In their motion to dismiss, the Official Defendants argue that there is no enabling statute similar to § 1983 that provides the

6. "A person is guilty of resisting arrest when he intentionally prevents or attempts to prevent a peace officer, recognized to be acting under color of his official authority, from effecting an arrest of the actor or another by: (a) Using or threatening to use physical force or violence against the peace officer or another; or (b) Using any other means creating a substantial risk of causing physical injury to the peace officer or another." K.R.S. § 520.090(1).

7. "A person is guilty of menacing when he intentionally places another person in reasonable apprehension of imminent physical injury." K.R.S. § 508.050(1). "A person is guilty of disorderly conduct when in a public place and with intent to cause public inconvenience, annoyance or alarm, or wantonly creating a risk thereof, he: (a) Engages in fighting or in violent, tumultuous or threatening behavior; or (b) Makes unreasonable noise; or (c) Refuses to obey an official order to disperse issued to maintain public safety in dangerous proximity to a fire, hazard or other emergency; or (d) Creates a hazardous or physically offensive condition by any act that serves no legitimate purpose." *Id.* § 525.060(1).

basis for the plaintiff to sue for damages for violation of these rights and, further, that the Kentucky General Assembly has not waived sovereign immunity for these claims. The plaintiff counters that the defendants removed the case to this Court in an attempt to dismiss his state court claims and deny him a forum to contest the actions of defendant Wells.

██ The plaintiff does not cite any authority for the proposition that he may seek money damages from the Commonwealth of Kentucky for a violation of his rights as established by the Kentucky Constitution, and the Court can find none. The principles of sovereign immunity "preclude[ ] the maintaining of any suit against the state unless the state has given its consent or otherwise waived its immunity." *Yanero v. Davis,* 65 S.W.3d 510, 517 (Ky. 2001) (citing the *Restatement (Second) of the Law of Torts* § 895B(1) (1979)). Because the Commonwealth has not waived its sovereign immunity, the plaintiff's constitutional claims against the Commonwealth must be dismissed.

██ Likewise, under the principles of governmental immunity, "a state agency is entitled to immunity from tort liability to the extent that it is performing a governmental, as opposed to a proprietary, function." *Id.* at 519 (citation and footnote omitted). There is no question in the present case that the Department of ABC was performing a governmental function with respect to the plaintiff. Therefore, any constitutional claims against the Department of ABC must likewise be dismissed. Finally, the constitutional claims against the individual defendants in their official capacities must also be dismissed, as "[t]he absolute immunity from suit afforded to the state also extends to public

officials sued in their representative (official) capacities, when the state is the real party against which relief in such cases is sought." *Id.* at 518 (citation omitted).[8]

### B. State Claims Against the Official Defendants in Count 3

In Count 3, the plaintiff charges all defendants generally with assault and battery; outrage; intentional infliction of emotional distress; and negligence *per se* based on a violation of K.R.S. § 503.090. The principles of sovereign and governmental immunity apply with equal force to the claims in this count and, therefore, they will be dismissed as against the Official Defendants.

### C. State Claims Against the Individual Defendants in Count 2

As noted above, in Count 2 the plaintiff seeks money damages from defendants Johnstone and Wells in their individual capacities for violation of §§ 2 and 10 of the Kentucky Constitution. The plaintiff cites no authority—and the Court can find none—under which he could recover money damages from individuals in their individual capacities for such violations. Therefore, these claims will be dismissed.

### D. State Claims Against the Individual Defendants in Count 3

In Count 3, the plaintiff asserts several torts against defendants Johnstone and Wells in their individual capacities. However, in his response brief, he indicates that these claims were only asserted as against defendant Wells. There is no allegation in the complaint that defendant Johnstone was present during the events of March 14, 2001. Therefore, there is no basis for holding him liable for assault and

---

**8.** The Kentucky Supreme Court refers to this as "absolute official immunity." *Yanero,* 65 S.W.3d at 522.

battery; outrage; intentional infliction of emotional distress; or negligence *per se* for violation of K.R.S. § 503.090. Accordingly, these claims will be dismissed as to defendant Johnstone in his individual capacity.

As to defendant Wells in his individual capacity, he argues that the Kentucky Board of Claims Act provides the exclusive remedy for allegations of negligence on the part of employees of the Commonwealth acting within the scope of their employment, and that jurisdiction within the Board of Claims is primary and exclusive. The plaintiff responds that the Board of Claims is not a proper forum for claims against state officers or individuals and is not a forum for intentional torts such as those alleged in the complaint.

 The Kentucky Board of Claims Act provides the following:

It is the intention of the General Assembly to provide the means to enable a person *negligently injured* by the Commonwealth, any of its cabinets, departments, bureaus or agencies, or any of its officers, agents or employees while acting within the scope of their employment by the Commonwealth or any of its cabinets, departments, bureaus or agencies to be able to assert their just claims as herein provided. *The Commonwealth thereby waives the sovereign immunity defense only in the limited situations as herein set forth. It is further the intention of the General Assembly to otherwise expressly preserve the sovereign immunity of the Commonwealth, any of its cabinets, departments, bureaus or agencies or any of its officers, agents or employees while acting in the scope of their employment by the Commonwealth or any of its cabinets, departments, bureaus or agencies in all other situations except where sovereign immunity is specifically and expressly waived as set forth by statute.* The Board of Claims shall have exclusive jurisdiction to hear claims for damages, except as otherwise specifically set forth by statute, against the Commonwealth, its cabinets, departments, bureaus, agencies or any of its officers, agents or employees while acting within the scope of their employment by the Commonwealth, its cabinets, departments, bureaus or agencies.

K.R.S. § 44.072 (emphases supplied). By its own language, then, this Act would only potentially deprive this Court of jurisdiction over the plaintiff's negligence claim against defendant Wells, but not his claims for intentional torts. Therefore, this Court retains jurisdiction over the plaintiff's claims for assault and battery, outrage, and intentional infliction of emotional distress.

With respect to the negligence claim, the plaintiff's complaint states the following: "The acts of the Defendants in violating the provisions of KRS 503.090, constituted negligence per se." Section 503.090 of the Kentucky Revised Statutes provides in relevant part the following:

The use of physical force by a defendant upon another person is justifiable when the defendant, acting under official authority, is making or assisting in making an arrest, and he:

(a) Believes that such force is necessary to effect the arrest;

(b) Makes known the purpose of the arrest or believes that it is otherwise known or cannot reasonably be made known to the person to be arrested; and

(c) Believes the arrest to be lawful.

K.R.S. § 503.090(1). The statute in question does not provide for a cause of action for damages based upon its violation and, therefore, under Kentucky law, the plaintiff must necessarily rely on K.R.S. § 446.070 for recovery:

A person injured by the violation of any statute may recover from the offender such damages as he sustained by reason of the violation, although a penalty or forfeiture is imposed for such violation.

K.R.S. § 446.070. This latter statute has been described by the Kentucky Supreme Court as "merely codif[ying] the common law concept of negligence *per se* . . . . [and] applies only if the alleged offender violated a statute and the plaintiff was in the class of persons which that statute was intended to protect." *Davidson v. American Freightways, Inc.*, 25 S.W.3d 94, 99–100 (Ky.2000). The Kentucky Supreme Court further stated in *Davidson* that "if the defendant was not in the class of persons whose conduct was intended to be regulated by the statute, the defendant could not violate the statute and KRS 446.070 simply would not apply." *Id.* at 100.

 In the present case, the statute that the plaintiff relies on, K.R.S. § 503.090, does not appear to be one that was intended to regulate conduct. While it does address the conduct of law enforcement officers, the statute merely provides a *defense* against a claim of excessive force and sets forth the elements of that defense. K.R.S. § 503.020 ("In any prosecution for an offense, justification, as defined in this chapter, is a defense."). Therefore, the principles of negligence *per se*—and, thus, K.R.S. § 446.070—do not come into play to create a cause of action for the plaintiff. If defendant Wells has violated § 503.090, he cannot rely on the defense of justification in response to a prosecution for an offense. Therefore, this state law claim should be dismissed, and the Court need not consider the more complex question—not fully briefed by the parties—of whether the Board of Claims has exclusive jurisdiction over this claim.[9]

## V. CONCLUSION

Accordingly, the Court, being otherwise fully and sufficiently advised, HEREBY ORDERS that

(1) the motion to dismiss of defendants (1) Commonwealth of Kentucky; (2) Department of Alcohol Beverage Control; (3) Richard Johnstone, in his official capacity as Commissioner, Department of Alcohol Beverage Control and in his individual capacity; and (4) Loren Wells, in his official capacity as an Alcohol Beverage Control Officer [DE # 4] is GRANTED IN PART and DENIED IN PART in accordance with this opinion and order;

(2) the motion to dismiss of defendant Wells in his individual capacity [DE # 9] is GRANTED IN PART and DENIED IN PART in accordance with this opinion and order;

(3) the following claims are DISMISSED WITH PREJUDICE and the plaintiff shall take nothing thereby:

(a) All § 1983 claims against the Commonwealth of Kentucky, the Department of ABC, and defendants Johnstone and Wells in their official capacities;

(b) The § 1983 claim based on *respondeat superior* against Johnstone in his individual capacity;

(c) All state law claims in Counts II and III against the Commonwealth of Kentucky, the Department of ABC,

---

9. The question of Board of Claims jurisdiction would require the Court to determine whether defendant Wells was entitled to "qualified official immunity" for his actions. Only if he was immune would the Board of Claims potentially have jurisdiction. *See Commonwealth v. Harris*, 59 S.W.3d 896, 898–99 (Ky. 2001). This determination would require an analysis of whether the acts in question were discretionary and done in good faith or ministerial. The parties have not addressed these particular questions in their briefs.

and defendants Johnstone and Wells in their official capacities;

(d) All state law claims in Count II against defendants Johnstone and Wells in their individual capacities;

(e) All state law claims in Count III against defendant Johnstone in his individual capacity; and

(f) The state law claim in Count III for negligence *per se* for violation of K.R.S. § 503.090 against defendant Wells in his individual capacity;

(4) the following claims are DISMISSED WITHOUT PREJUDICE:

(a) The § 1983 claims based on (i) unlawful seizure of his person, (ii) violation of his substantive due process rights, and (iii) lack of probable cause for the arrest against defendant Wells in his individual capacity;

(5) the following claims remain for resolution:

(a) The § 1983 claim based on failure to train against defendant Johnstone in his individual capacity;

(b) The § 1983 claim based on excessive use of force against defendant Wells in his individual capacity; and

(c) The state law claims in Count III for (i) assault and battery, (ii) outrage, and (iii) intentional infliction of emotional distress against defendant Wells in his individual capacity; and

(6) this is an interlocutory order in all respects.