KENTUCKY NATIONAL INSURANCE COMPANY, Appellant/Cross–Appellee,

v.

Shirley SHAFFER, Appellee/Cross–Appellant.

Nos. 2003–CA–001390–MR, 2003–CA–001424–MR.

Court of Appeals of Kentucky.

Dec. 3, 2004.

As Modified Feb. 4, 2005.

Case Ordered Published by Court of Appeals Feb. 4, 2005.

21. *Id.*

22. *Id.* at 859.

739

Galen L. Clark, Ricketts & Travis, Louisville, KY, for Appellant/Cross-Appellee.

Charles E. Fell, Jr., Randall Wright, Louisville, KY, for Appellee/ Cross-Appellant.

Before DYCHE and McANULTY, Judges; EMBERTON, Senior Judge.[1]

*OPINION*

DYCHE, Judge.

This case involves allegations of bad faith for failure to settle a claim stemming from an automobile accident under common law principles and the Kentucky Unfair Claims Settlement Practices Act, KRS 304.12–230. A jury trial was held, and the jury returned a verdict finding no common law bad faith, but nonetheless finding a statutory violation, for which the jury awarded $10,000. The jury declined to award any punitive damages. Upon our review, we conclude that, as a matter of law, there can be no claim for bad faith in the present matter. Therefore, we reverse the judgment. The appellee's cross-appeal is hereby denied as moot.

The facts and proceedings of the underlying case involving the automobile accident include that on May 5, 1995, appellee, Shirley Shaffer, was injured in an automobile accident when Jesse Coe ran a red light, hitting the automobile in which Mrs. Shaffer was riding. Coe openly admitted liability in the accident, and his insurer, Farm Bureau, offered its $25,000 in coverage before suit was filed.

On May 6, 1996, Mrs. Shaffer filed suit in the underlying case in Jefferson Circuit Court originally naming only Jesse Coe and her underinsured motorist carrier, State Farm Mutual Automobile Insurance Company, as defendants. (*"Shaffer v. Coe,"* Case No. 96–CI–02663, 1998 WL 34111359 (1998)). It was not until after discovery in the *Shaffer v. Coe* case had commenced that Mrs. Shaffer learned that Coe was in the scope of his employment at the time of the accident.[2] Coe was involved in the cleaning business and was en route to clean a restaurant on behalf of Reliable Cleaning Services.

Larry Casper owned and operated Reliable Cleaning Services and had a Commercial General Liability Policy issued by appellant, Kentucky National Insurance Company, with policy limits of $50,000.[3] On November 10, 1997, Kentucky National received notice that Casper had been named as a third party defendant by State

---

1. Senior Judge Thomas D. Emberton sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and KRS 21.580.

2. In the matter of *Shaffer v. Coe,* there was a substantial issue regarding whether Coe's status was that of an independent contractor or employee. The circuit court held, as a matter of law, that Coe was an employee.

3. At times through the *Shaffer v. Coe* matter, it was erroneously stated that Kentucky National's policy limit was $100,000.

Farm in the *Shaffer v. Coe* matter. There is no dispute, however, that an exclusion in Casper's policy applied, and there was, in fact, no liability coverage under the policy. In spite of the clearly worded exclusion, its relevance was unfortunately not discovered until after the trial in *Shaffer v. Coe*. Thus, Kentucky National never relied upon it to deny coverage.

Instead, upon notice of the suit, Kentucky National turned the matter of *Shaffer v. Coe* over to attorney Walter L. Porter and later to Matthew Troutman to offer a defense to Casper, as Kentucky National's insured.[4] At the time Kentucky National became involved in the *Shaffer v. Coe* matter, discovery had already started,[5] and trial had already been set to commence within a few months.[6]

The parties were not able to reach a settlement in *Shaffer v. Coe* prior to the commencement of trial, with each party placing blame on the other parties for failure to reach a settlement. However, in the middle of the trial, State Farm entered into a settlement with Mrs. Shaffer, in which Mrs. Shaffer was to receive a total of $125,000 from State Farm[7] and State Farm, in turn, would collect Coe's $25,000 policy limits and Kentucky National's policy limits of $50,000. Although Kentucky National offered its policy limits to Mrs. Shaffer's attorney prior to closing arguments, the testimony in this matter clearly shows that neither she nor her husband were ever made aware of the offer. Apparently, Mrs. Shaffer's attorney rejected the offer, and thereafter the jury returned with a verdict for $200,000. Following the jury's verdict, Kentucky National again offered its policy limits.

Mrs. Shaffer thereafter brought the present action under an assignment of rights for both first party and third party common law bad faith and statutory bad faith, pursuant to KRS 304.12–230.[8] A jury trial was held in the present matter, wherein the jury returned a verdict finding no common law bad faith, but nonetheless finding a statutory violation, for which the jury awarded $10,000. The jury declined to award any punitive damages.

Without further belaboring the facts, negotiations, and proceedings in both matters, there are several points which are

**4.** To the extent any arguments regarding bad faith relate to Coe, we find such to have no merit. Coe was defended by his own attorney throughout the *Shaffer v. Coe* proceedings and thus suffered no prejudice by the actions of Kentucky National. *See Davis v. Home Indemnity Co.*, Ky., 659 S.W.2d 185, 189 (1983).

**5.** In its reply brief, Kentucky National relies on our recent opinion in *Knotts v. Zurich Ins. Co.*, —— S.W.3d ——, 2002–CA–001846–MR, 2004 WL 221213 (Feb. 6, 2004), which held Kentucky's UCSPA only applies to pre-litigation claims and conduct. According to *Knotts*, once litigation has commenced, the UCSPA no longer plays a role, but instead the Rules of Civil Procedure provide "redress for improper conduct of litigants." However, Kentucky National cannot rely on *Knotts* as it failed to preserve this issue at the trial court level. Furthermore, although the *Knotts* opinion was designated for publication, it is not final due to pending motion for discretionary review in the Supreme Court. It is impermissible to cite *Knotts* as authority. *See* CR 76.28(4)(c) (unpublished opinions "shall not be cited or used as authority in any other case in any court of this state"); *Kohler v. Commonwealth, Transp. Cab.*, Ky.App., 944 S.W.2d 146, 147 (1997) (trial court cannot rely on nonfinal opinion of appellate court).

**6.** The trial date was ultimately moved several times. It was finally held in March of 1999.

**7.** State Farm had advanced this amount to Mrs. Shaffer to protect its subrogation and indemnity rights against Coe pursuant to *Coots v. Allstate Co.*, Ky., 853 S.W.2d 895 (1993).

**8.** Casper entered into a settlement agreement assigning any bad faith claims he had against Kentucky National to Mrs. Shaffer.

readily settled. We pause to point out that the first three of these points are not dispositive of our conclusion in this case, but are, nonetheless, important to note for a full grasp of the nature of this matter.

First, there can be no real debate that there is very little in Kentucky National's file regarding an investigation by a claims agent of Mrs. Shaffer's claims. Nor were ordinary insurance procedures followed in this matter. Nonetheless, at the point in which Kentucky National was notified of the claim, a lawsuit, with a nearing trial date, was already pending. Kentucky National's attorney was directing the case, participating in discovery, and keeping Kentucky National informed of the status of the claims.

Second, the medical evidence regarding Mrs. Shaffer's injuries was highly debatable. She had suffered from polio as a child and had some resultant complications from that. Furthermore, the record contains evidence that even her attorney believed her value of the case was exaggerated. She was seeking $2.1 million in damages but was awarded only $200,000 from the jury.

Third, Kentucky National only offered its policy limits after the trial in *Shaffer v. Coe* had started. However, the record in the matter does not show any evidence that Mrs. Shaffer was willing to accept the policy limits from Kentucky National. In Mr. Shaffer's deposition, he stated in no uncertain terms that Mrs. Shaffer "always wanted to go to trial ... [and didn't] care if they award[ed][her] nothing." When asked in his deposition if Mrs. Shaffer planned to go to trial, he stated, "Oh, absolutely. There was never any suggestion otherwise."

Fourth, and most important for our disposition of this matter on an issue of law, all parties and experts in this matter agree that an exclusion applied in Kentucky National's insurance policy with Casper. Hence, there was never any actual coverage under the policy for Coe's accident with Mrs. Shaffer. However, this exclusion was not discovered until after the jury verdict in *Shaffer v. Coe*. Notwithstanding the clear exclusion, Kentucky National still offered its policy limits of $50,000 to Mrs. Shaffer.

Kentucky National concedes that pursuant to *Cincinnati Ins. Co. v. Vance*, Ky., 730 S.W.2d 521 (1987), it was estopped from later withdrawing its legal representation in *Shaffer v. Coe* and paying under the policy.[9] However, it maintains that payment of its policy limits is as far as its liability extends where there was no actual contractual obligation under the insurance policy. In other words, there can be no claim for bad faith where a contractual obligation for coverage is lacking.

In reviewing a bad faith claim, this Court must first look to *Wittmer v. Jones*, Ky., 864 S.W.2d 885 (1993). In *Davidson v. American Freightways, Inc.*, Ky., 25 S.W.3d 94, 100 (2000), the Court noted that, "[w]riting for a unanimous Court in *Wittmer*, Justice Leibson gathered all of the bad faith liability theories under one roof and established a test applicable to all bad faith actions, whether brought by a first-party claimant or a third-party claimant, and whether premised upon common law theory or a statutory violation."

■ Pursuant to *Wittmer*, 864 S.W.2d at 890 (citation omitted), the three required elements for a cause of action for bad faith are as follows:

9. This is not necessarily such a broad rule. There are instances where the insured has not been prejudiced wherein estoppel would not apply. *See Vance*, 730 S.W.2d 521.

(1) The insurer must be obligated to pay the claim under the terms of the policy; (2) the insurer must lack a reasonable basis in law or fact for denying the claim; and (3) it must be shown that the insurer either knew there was no reasonable basis for denying the claim or acted with reckless disregard for whether such a basis existed.

We have found no published Kentucky cases applying *Wittmer* under facts similar to those at hand.[10] Texas courts have held, however, that as a general rule where there is no coverage there can be no claim for bad faith. *See Republic Insurance Co. v. Stoker*, 903 S.W.2d 338, 341 (Tex.1995); *Meridian Oil Production, Inc. v. Hartford Accident and Indemnity Co.*, 27 F.3d 150, 152–53 (5th Cir.1994). However, while these cases are similar to the case at hand, they do lack the element of waiver and estoppel.

Notwithstanding this, upon consideration of the matter, we believe it is sound principle that, in absence of a contractual obligation in an insurance policy for coverage, there can be no claim for bad faith. This is particularly so when we consider that in *Stoker*, 903 S.W.2d at 341, the Court held that an insurer would not be liable for bad faith even though it gave an incorrect reason for the denial of the claim, where proper grounds existed for denial.

Our conclusion is buttressed by a review of how Kentucky courts have interpreted the elements under *Wittmer*. Our attention is drawn to *Davidson*, 25 S.W.3d 94, wherein the Court reviewed whether a bad faith claim could be brought against a self-insurer. In no uncertain terms, the Court held as follows:

> The gravamen of the UCSPA is that an insurance company is required to deal in good faith with a claimant, whether an insured or a third-party, with respect to a claim which the insurance company is *contractually obligated* to pay. Absent a contractual obligation, there simply is no bad faith cause of action, either at common law or by statute....

*Davidson*, 25 S.W.3d at 100 (emphasis in original).

We are aware that *Davidson* dealt with a separate coverage issue. Nonetheless, we find compelling the Court's unequivocally firm holding that, in the absence of a contractual obligation to pay, there can be no action for bad faith. Therefore, we apply this principle to the present matter.

Accordingly, there being no contractual obligation to pay under the present policy, we conclude as a matter of law that Mrs. Shaffer could not maintain an action for bad faith against Kentucky National. Hence, the judgment of the Jefferson Circuit Court is hereby reversed. Based upon the disposition of this matter, Mrs. Shaffer's cross-appeal is hereby denied as moot.

ALL CONCUR.

---

10. We did, however, locate the unpublished case of *Williams v. Frontier Ins. Co.*, 1999 WL 33603134 (W.D.Ky. May 27, 1999). The federal district court applied Kentucky law and cited to *Wittmer*, holding that "[t]he fact that the insurer defended Plaintiff in the prior action and was involved in settlement negotiations does not establish a cause of action for bad faith, since Plaintiff must first establish that the insurer had an obligation to pay under the policy."