BRIEF FOR APPELLANT: Brett Houston Oppenheimer, Louisville, Kentucky, Davis S. Strite, Louisville, Kentucky, Joseph Charles Klausing, Louisville, Kentucky.
ORAL ARGUMENT FOR APPELLANT: Joseph Charles Klausing, Louisville, Kentucky.
BRIEF FOR APPELLEE: Anna Stahr Rueff, Louisville, Kentucky, Gregory L. Smith, Louisville, Kentucky.
COUNSEL FOR NATIONWIDE MUTUAL FIRE INSURANCE COMPANY: Carmen C. Sarge, Cincinnati, Ohio, Anthony Galasso, Jr., Louisville, Kentucky.
ORAL ARGUMENT FOR APPELLEE: Anna Stahr Rueff, Louisville, Kentucky.
BEFORE: CLAYTON, COMBS, AND D. LAMBERT, JUDGES.
OPINION
LAMBERT, D., JUDGE:
Charles Pearson appeals the entry of summary judgment by the Jefferson Circuit Court in the personal injury negligence claim asserted against his wife, Paula Pearson. Charles asks us to review whether the trial court properly concluded that Paula lacked a duty due to the unforeseeable nature of the injury. Because we disagree with the trial court as to its legal determination regarding foreseeability, we reverse the entry of summary judgment and remand the matter to the trial court.
I. FACTUAL AND PROCEDURAL HISTORY
Charles was alone at the parties' home on September 25, 2010. At some point, he proceeded to the bathroom. Unbeknownst to Charles, Paula had purchased a motion-sensing air freshener device, and placed it on a shelf above the toilet. The device, detecting Charles' movement in the room, released a mist of its contents directly into Charles' face as he stood in front of the toilet. Charles inhaled and ingested this substance. He experienced immediate difficulty breathing and attempted to wash the chemicals off-to limited effect. He estimated it took him five to seven minutes after leaving the bathroom to catch his breath. Charles later returned to investigate what had happened, and discovered the device.
When Paula returned home, Charles asked her about the air freshener. She responded that she had bought the device and placed it above the toilet. She later admitted in deposition testimony that she did not read the instructions or warnings on the packaging or on the device itself. The instructions included placing the device at least six feet above the ground. The warnings noted that the mist was harmful if swallowed, ingested, or if it came into contact with the eyes. Specifically, those *513 warnings contain the following relevant language:
DANGER: FLAMMABLE. HARMFUL OR FATAL IF SWALLOWED. EYE IRRITANT. May be harmful if directly inhaled. May cause allergic reactions in some individuals. DO NOT spray towards face or body. DO NOT get in eyes. Avoid contact with skin.... IF INGESTED DO NOT INDUCE VOMITING. IMMEDIATELY call a physician or Poison Control Center.... Intentional misuse by deliberately concentrating and inhaling contents can be harmful or fatal.
Both the instructions and the warnings directed against placing the device where it could spray individuals in the face. Paula also admitted in testimony that it was "common sense" not to spray someone in the face with the device.
In the weeks following the face-spraying incident, Charles continued to experience respiratory issues, ultimately requiring hospitalization for twelve days. Dr. Kenneth Anderson, who treated Charles, diagnosed him with "asthmatic bronchitis, exacerbated by chemical exposure[.]" Having been a smoker for fifteen years, Charles was no stranger to respiratory difficulties, though he had quit smoking some time ago and not been hospitalized for any respiratory symptoms since 2001. Also, Charles testified that he had not had any respiratory symptoms at all in the year prior to the incident.
Charles' course of treatment after his October 2010 hospitalization grew increasingly complex. To maintain his ability to work, doctors placed him on oral steroids, oxygen, and respiratory treatments.
On September 14, 2011, Charles initiated the civil action below, asserting claims against Paula for negligence, Nationwide Mutual Fire Insurance Company (Charles and Paula's homeowner's insurance carrier) for bad faith failure to pay,[1] and the manufacturer of the device in strict liability. Several expert witnesses gave deposition testimony. Shortly before the matter went to trial, the manufacturer settled and was dismissed from the action, but the litigation continued as to the negligence claim.
Charles' expert, Jahan Rastay, Ph.D., offered several opinions: 1) a consumer who has never previously used a product has a duty to read the instructions and warnings regarding its use, 2) the device had been placed at the worst possible position in the bathroom, 3) a prudent person would not have placed the device in the position where Paula had placed it, 4) the device was placed below the recommended height of six feet, 5) the placement of the device created an unreasonable risk that someone might be sprayed in the face.
Paula's expert, Sarah Metzler, D.Sc., P.E., also offered testimony criticizing Paula's use of the device. Dr. Metzler testified that a product's user should want to know its proper intended use. Dr. Metzler also pointed out that the product's instructions cautioned against pointing the device at someone's face no less than five times. She further stated that even without reading the instructions, common sense would dictate the device not be placed where it could spray someone in the face, and that Paula did not place the device in such a position that would avoid that eventuality. Dr. Metzler went on to testify that a consumer should read the instructions and act to minimize the risk of potential harm, and further opined that it would have been prudent for Paula to inform Charles of the device's presence.
Testimony from several medical practitioners also provided information on Charles' condition and treatment. Dr. *514 Anderson testified as to his diagnosis of Charles, noting that his diagnosis reflected what he referred to as a "cause-and-effect" relationship between the incident and Charles' condition: "He was fine, something happened, now he's not fine." Dr. Richard Aud provided additional insight into Charles' medical history: that Charles had never exhibited sinus symptoms prior to his exposure to the air freshener's chemicals. Dr. Dale Haller treated Charles for reactive airway disease, which he testified is caused by an exposure to "any number of chemicals." The testimony of Charles' pharmacist, Dr. Gregory Purvis, established a timeline of Charles' prescriptions, which he noted increased significantly following his exposure.
The defense moved for summary judgment, arguing that the record did not reflect any duty owed by Paula to Charles and that Charles lacked proof that Paula's actions were a substantial factor in the injury. In an order entered on July 7, 2015, the trial court denied the motion, holding that the record presented unresolved issues of material fact.
On August 16, 2016, the trial court, acting sua sponte , entered a summary judgment in favor of the defense. The trial court offered the following reasoning:
Because Charles does not fit into a category of a person entitled to a heightened duty of care under Kentucky law, Paula owed Charles no more duty than the universal duty of care. No argument can be made that the harm allegedly suffered by Charles was generally foreseeable by Paula, who installed a device which functioned in the manner in which it was designed to function.
This appeal followed.
II. ANALYSIS
A. STANDARD OF REVIEW
Summary judgment is a procedural mechanism by which actions presenting no litigable issue may be expeditiously resolved. Kentucky Rule of Civil Procedure (CR) 56.03. Appellate review of a summary judgment involves an examination as to whether the trial court correctly determined that the record did not present an unresolved issue of material fact. Steelvest, Inc. v. Scansteel Serv. Ctr., Inc. , 807 S.W.2d 476, 483 (Ky. 1991). Examining the evidence in the light most favorable to the non-moving party, the trial court's analysis focuses solely on the existence of unresolved factual issues and not the resolution of such issues; therefore, the trial court's examination is legal in nature. We apply a de novo standard when reviewing conclusions of law, with no deference to the trial court's decision. Davis v. Scott , 320 S.W.3d 87, 90 (Ky. 2010) (citation omitted).
B. THE TRIAL COURT ERRED IN ENTERING JUDGMENT AS A MATTER OF LAW
This action presents a situation where one spouse asserts a tort claim against the other. Kentucky law has explicitly allowed spouses to assert claims against each other since the early 1950's, when the General Assembly enacted legislation abolishing common law inter-spousal immunity. See Brown v. Gosser , 262 S.W.2d 480 (Ky. 1953).
As the trial court correctly noted, in every negligence action, the first inquiry must always involve the legal question of the existence of a duty. The trial court also correctly concluded that the concepts of premises liability do not apply in this action, because Charles fits into none of the roles inherent in premises liability (licensee, invitee, or trespasser). As such, the "universal duty of care" applies in this case. See Jenkins v. Best , 250 S.W.3d 680, 691 (Ky. App. 2007) (quoting Kirschner v. Louisville Gas & Elec. Co. , 743 S.W.2d 840, 848 (Ky. 1988) ("The duty to exercise *515 reasonable care commensurate with the circumstances not to injure other human beings is the universal duty of care owed by everyone to everyone.")) Kentucky appellate courts have repeatedly held that the so-called universal duty is anything but universal,[2] and have narrowed its application to instances where the harm resulting from a defendant's act was foreseeable. T & M Jewelry, Inc. v. Hicks , 189 S.W.3d 526, 531 (Ky. 2006). The Supreme Court clarified how to determine the foreseeability of the harm:
In deciding whether harm was foreseeable, Kentucky courts look to the general foreseeability of harm, not to whether the particular, precise form of injury could be foreseen. It is enough that injury of some kind to some person within the natural range of effect of the alleged negligent act could have been foreseen.
Id.
It is at this point that we disagree with the trial court, which concluded that "No argument can be made that the harm allegedly suffered by Charles was generally foreseeable by Paula[.]" This conclusion, premised on the idea that the air freshener performed as designed, ignores the fact that Paula admittedly did not place the device as intended by its designers-indeed she placed it in a manner directly contradicted by the manufacturer's safety warnings. The consequences of misusing a product are within the natural range of effect of that misuse. Both the manufacturer's warnings and common-sense caution users against spraying the device directly into someone's face, and an "injury of some kind" flows naturally from that. Therefore, we conclude that the trial court erred in its conclusion that Charles' alleged injury was not foreseeable.
Paula asserts a policy argument, that applying the universal duty to spouses within the home widens the concept of negligence to a degree that every behavior or product purchase creates potential liability. This fallacious "slippery slope" argument ignores the fact that Kentucky has permitted suits between spouses for decades. Brown, supra.; Combs v. Combs , 262 S.W.2d 821 (Ky. 1953) (Holding that trial court erred in ruling that wife may not maintain action against husband for injuries sustained in vehicle crash); Arnett v. Thompson , 433 S.W.2d 109, 114 (Ky. 1968) ("[T]he policy of the law of this state is to allow recovery for injuries or death resulting from negligence," regardless of whether the plaintiff and defendant are husband and wife); Lewis by Lewis v. West American Ins. Co. , 927 S.W.2d 829 (Ky. 1996) (Holding family exclusions in vehicle insurance policies void as against public policy).
Paula also argues that the record does not establish causation. However, the trial court's ruling dealt solely with the legal issues of foreseeability and duty without considering the factual issue of causation. Because the issue of causation had no effect on the ruling of the trial court in the order from which this appeal was taken, that issue is not before this Court.
III. CONCLUSION
After examining the record, we conclude the trial court erred in concluding as a matter of law that the alleged injury suffered by Charles was unforeseeable. The trial court also erred in its ultimate ruling that Paula lacked any cognizable duty to Charles. For that reason, we reverse the trial court's entry of summary judgment and remand the matter for further proceedings.
COMBS, JUDGE, CONCURS.
CLAYTON, JUDGE, CONCURS IN RESULT ONLY.

The bad faith claim is not directly an issue in this appeal.

See generally DeStock No. 14 v. Logsdon , 993 S.W.2d 952 (Ky. 1999) ; James v. Wilson , 95 S.W.3d 875 (Ky. App. 2002) ; N. Hardin Dev., Inc. v. Corkran , 839 S.W.2d 258 (Ky. 1992) ; T & M Jewelry, Inc. v. Hicks , 189 S.W.3d 526 (Ky. 2006) ; Jenkins, supra.