RENDERED: FEBRUARY 9, 2024; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-1105-MR

MARTIN J. BREEDLOVE                                        APPELLANT

|   |   |
|---|---|
| v. | APPEAL FROM JEFFERSON CIRCUIT COURT<br>HONORABLE JESSICA E. GREEN, JUDGE<br>ACTION NO. 17-CI-003575 |

STATE FARM FIRE AND
CASUALTY COMPANY, AND GARY
BINION                                                    APPELLEES

AND

NO. 2023-CA-0024-MR

MARTIN J. BREEDLOVE                                        APPELLANT

|   |   |
|---|---|
| v. | APPEAL FROM JEFFERSON CIRCUIT COURT<br>HONORABLE JESSICA E. GREEN, JUDGE<br>ACTION NO. 17-CI-003575 |

STATE FARM FIRE &
CASUALTY COMPANY
AND GARY BINION                                           APPELLEES

** ** ** ** **

BEFORE:  COMBS, JONES, AND McNEILL, JUDGES.

JONES, JUDGE:  Martin Breedlove appeals from the trial court's orders granting summary judgment to State Farm Fire and Casualty Company (State Farm) and dismissing the suit against Gary Binion, a claims adjuster employed by State Farm. After a thorough review of the facts and the law, we affirm.

## I.    BACKGROUND

On November 29, 2016, Martin Breedlove was riding his motorcycle on Eastern Parkway in Louisville on the way to his cousin's birthday party. Breedlove was traveling in the right-hand lane when Jaryne Coles unsuccessfully attempted to merge on to Eastern Parkway in her passenger car by speeding ahead of Breedlove's motorcycle. Coles failed to clear Breedlove's motorcycle. When she entered Breedlove's lane, her vehicle's left rear quarter panel struck the motorcycle's front wheel. Breedlove, who was not wearing a helmet, suffered injuries to his head as well as to his knee and his back. At least two bystanders telephoned 911 requesting emergency assistance. Louisville Metro Police arrived and spoke to Breedlove at the scene; however, according to Breedlove, the

conversation revolved around his health and not the circumstances of the accident itself. Breedlove was eventually convinced to leave in an ambulance.

Following the collision, Breedlove sought recovery for his property and bodily injury damages from Coles's insurer, State Farm. State Farm began its investigation promptly and, on January 7, 2017, received a copy of the police report detailing the incident. Unfortunately, the police report's narrative and attached diagram had erroneously reversed the vehicles' roles in the collision, stating that *Breedlove* had unsuccessfully attempted to merge on to Eastern Parkway and collided with Coles's vehicle. The police report concluded by stating the officer was unable to determine fault for the incident. After receiving a copy of the police report, State Farm, through its employee adjuster, Gary Binion, contested its liability and denied payment, based on its belief that Breedlove had improperly merged. Breedlove's counsel did not attempt to correct the faulty police report, but instead sent two of the bystander witness 911 recordings to State Farm. One of the recordings told police that "somebody got hit on a motorcycle," while the other definitively stated that Coles's vehicle was responsible for the accident. Nonetheless, State Farm chose to rely on the facts outlined in the police report, which remained uncorrected.

Several months later, on July 7, 2017, Breedlove filed his complaint asserting a negligence claim against Coles, along with underinsured motorist

(UIM) claims against his own insurers, GEICO and Dairyland Insurance Company. Breedlove's complaint also included a claim that State Farm and Binion had violated KRS[1] 304.12-230, Kentucky's Unfair Claims Settlement Practices Act (UCSPA). Breedlove alleged that State Farm and Binion engaged in bad faith contrary to the statute when they continued to deny State Farm's responsibility to pay the claim even after its liability had become reasonably clear. About one month later, the trial court ordered a bifurcation and stay of the bad faith claims against State Farm and Binion, ruling that discovery would begin and a trial date would be assigned for those claims once the underlying personal injury claim had been resolved.

At some point shortly thereafter, State Farm retained counsel who recognized that the police report had erroneously characterized which vehicle was merging on Eastern Parkway at the time of the collision.[2] Once State Farm understood the actual circumstances of the accident, the underlying negligence claim against Coles was resolved after Breedlove submitted documentation of his medical damages. State Farm offered payment on March 8, 2018, and the suit against Coles settled in April 2018 for the policy limits. On September 26, 2018,

---

[1] Kentucky Revised Statutes.

[2] The record is not clear as to exactly when State Farm recognized the police report's fundamental error, but one of State Farm's trial court memoranda asserts that State Farm recognized the mistake approximately two months after the complaint was filed, which would be about early September 2017.

the trial court lifted the stay on the bad faith issues, although the trial court ordered that the bad faith claims would continue to be bifurcated from the UIM claims.

Breedlove resolved his UIM suits against GEICO and Dairyland approximately one year later, in April and May 2019. At this point, the sole remaining issues were the bad faith claims, but the record shows a period of dormancy lasting about ten months. On February 19, 2020, the trial court ordered the parties to show cause why the matter should not be dismissed without prejudice for apparent inactivity. Breedlove responded to the order, and the bad faith actions resumed in pretrial hearings. Binion moved to dismiss the case against him under CR[3] 12.02(f), arguing that UCSPA does not apply to him as a matter of law. In an order entered on August 17, 2020, the trial court agreed, ruling that, although "this is an unsettled area of law in the Commonwealth," a claim for bad faith or for a violation of UCSPA applies to insurers, not the individual adjusters employed by insurers. (Record (R.) at 310-12.)

At the beginning of 2021, the bad faith claims were still in a pretrial phase. In a hearing held on January 4, 2021, the trial court informed the parties that a deadline had become necessary to depose all fact witnesses and for other written discovery. The parties eventually agreed to a deadline of March 31, 2021, which would also function as the next hearing date. When March 31st arrived,

---

[3] Kentucky Rules of Civil Procedure.

however, Breedlove's counsel requested an extension, as she had just received discovery the previous week. She also wanted State Farm to produce its claims manuals prior to scheduling Binion's deposition. State Farm responded that it would not produce the manuals unless there was a protective order in place preventing their public dissemination. The trial court understood the reasoning behind the parties' discovery issues and pushed the next status date to the middle of June. The trial court suggested this date, June 15, would also be the new deadline for discovery.

On June 15, 2021, Breedlove was still not ready, and State Farm indicated that it wished to go forward with a summary judgment motion.[4] Breedlove claimed that State Farm had not responded to discovery requests, a claim which State Farm denied as untrue. The trial court noted the case had begun in 2017, and the age of the case was becoming a cause for concern. At this point, the trial court entered a detailed jury trial order, which set a firm trial date of May 24, 2022. (R. at 320.) This order explicitly stated that there would be no continuance granted for this trial date, even by agreement of the parties, without prior approval by the court. In addition, the order mandated certain hard deadlines for further discovery and pretrial motions. Objections to depositions and motions

---

[4] On September 17, 2021, the trial court denied State Farm's first motion for summary judgment, stating it was premature.

*in limine* were to be submitted no later than sixty days before trial. Witness lists, exhibits, itemized damages, medical examinations, amended pleadings, depositions, and dispositive motions all were to be completed ninety days before trial. Mediation and trial memoranda were to be completed thirty days before trial. Notably, the order also set a deadline for the plaintiff to disclose expert witnesses on or before November 1, 2021, and for the defense to disclose its expert witnesses on or before February 1, 2022.

State Farm complied with the trial court's pretrial order on February 1, 2022, identifying an expert in the field of insurance practices and claim investigation along with a short summary of his expected testimony. On February 23rd, after the trial court's discovery deadlines had passed, State Farm renewed its summary judgment motion. State Farm pointed out that Breedlove had failed to take depositions or identify experts who would testify as to the proper handling of insurance claims. Indeed, State Farm pointed out that Breedlove had failed to identify any evidence to suggest State Farm had handled the claim improperly, let alone to an extent which qualified as bad faith.

Breedlove asked for an extension of time to respond to the motion, and the trial court conducted a hearing on the motion on March 21, 2022. During the hearing, State Farm strenuously objected to any further extensions, as they would be too close to the trial date. The trial court ordered that the trial date would

remain set for May 24th, but it gave Breedlove until April 15th to file his response to the summary judgment motion.

A few weeks later, on April 6th, State Farm filed a motion to maintain the May 24th trial date. Breedlove filed a response opposing the motion, arguing that he did not have time to depose witnesses disclosed by State Farm on February 1st. In addition, Breedlove argued that State Farm had not allowed Binion to be deposed without a comprehensive protective order, and Breedlove would not acquiesce to such an order. State Farm responded that Breedlove never followed up on the protective order. State Farm also contended that it had complied with all the trial court's deadlines, and if Breedlove had issues with those deadlines, he could have moved the court to change those at an earlier date. In a hearing on the order, the trial court finally told the parties that the case must move forward and left the trial date intact, while also adding that, if Breedlove wanted to do depositions, "you should do them, like, now."

The trial court ultimately entered an order on May 11, 2022, granting summary judgment to State Farm. Therein, the trial court determined that Breedlove had failed to identify an expert for trial and, therefore, he would not be able to present a colorable claim of bad faith. The trial court disagreed with Breedlove's contention that a jury could determine the reasonableness of State Farm's conduct on its own; the trial court found that an expert would be necessary

to show not only unreasonable conduct, but also that the conduct was outrageous enough for a determination of bad faith. As an additional and independent basis to grant summary judgment, the trial court pointed out that Breedlove had failed to timely disclose fact witnesses and itemized damages, not doing so until May 2, 2022, less than a month prior to trial. The trial court determined that the tardy disclosures so close to the trial date prejudiced State Farm's ability to prepare for trial.

In response, Breedlove moved the trial court to vacate the summary judgment order under CR 59.05. Breedlove's arguments were twofold; first, that the trial court had erroneously determined that all bad faith claims require expert testimony, and second, that the trial court's summary judgment for mere failure to meet pretrial deadlines was too severe.

The trial court disagreed with both of Breedlove's arguments. First, the trial court stated it had the discretion under KRE[5] 702 to determine that an expert would be necessary in this particular case. The trial court pointed out that a jury would be hard pressed to gauge either the reasonableness or outrageousness of State Farm's conduct without hearing from an expert knowledgeable on such matters, and Breedlove had failed to identify such an expert. Second, the trial court pointed out that Breedlove had, since the notice of dismissal in February

---

[5] Kentucky Rules of Evidence.

2020, repeatedly violated deadlines for key discovery without that discovery ever being taken. In the end, Breedlove finally disclosed trial witnesses and itemized damages about three weeks before the trial date of May 24th, and such late disclosures were prejudicial to State Farm. In sum, the trial court concluded that the history of dilatoriness and the prejudice to State Farm by the late disclosures had warranted summary judgment. As such, on August 15, 2022, the trial court denied Breedlove's CR 59.05 motion.

Breedlove's next steps were procedurally unorthodox. On September 13, 2022, he filed a notice of appeal from the interlocutory opinion and order dismissing Binion as a party, the May 11, 2022 opinion and order granting summary judgment to State Farm, and the August 15, 2022 amended opinion and order. The notice of appeal also pointed out that there was a *second* CR 59.05 motion pending in the circuit court, which Breedlove contended was permissible because the amended opinion and order "is considered a new judgment and properly the subject of a timely CR 59[.05] motion that tolls the time for appeal." (R. at 643 n.1.)

Indeed, Breedlove had filed his second CR 59.05 on August 24, 2022. This motion asked the trial court to amend the August 15th opinion and order to dismiss the action *without prejudice* and to include the appropriate recitations indicating the opinion was final and appealable. Noting that successive CR 59.05

-10-

motions are ordinarily disfavored, Breedlove contended the motion was permissible in this case because the August 15th opinion and order effectively amended the previous May 11th opinion and order. Next, Breedlove contended the case should be specified as dismissed without prejudice because the trial court's rationale mirrored actions dismissed for dilatoriness under CR 77.02, and dismissal without prejudice is required in those cases. Furthermore, Breedlove argued that CR 41.01 permitted the trial court to grant a voluntary dismissal without prejudice at the request of a party. Finally, Breedlove argued that the bad faith claim in this case did not accrue until the underlying negligence claim was settled in April 2018, pursuant to *United States Liability Insurance Co. v. Watson*, 626 S.W.3d 569 (Ky. 2021). Because the bad faith claim had not accrued when it was filed with the original negligence suit, Breedlove argued that the bad faith claim was unripe, depriving the trial court of subject matter jurisdiction pursuant to *Doe v. Golden & Walters, PLLC*, 173 S.W.3d 260, 275-76 (Ky. App. 2005).

Following a hearing on the issues raised in the second CR 59.05 motion, the trial court entered a supplemental order on December 19, 2022, which denied the motion to amend its opinion as being "without prejudice." The trial court specified that the claims were "dismissed in their entirety, with prejudice to refiling." (R. at 921.) However, the trial court granted Breedlove's motion to add the appropriate finality recitations. Breedlove filed a second notice of appeal from

the amended opinion and order entered on December 19, 2022. This appeal followed.

## II.   ANALYSIS

Breedlove presents three arguments on appeal. First, he contends the trial court lacked subject matter jurisdiction over the bad faith claims because they were unripe at the time the complaint was filed. Second, Breedlove contends the trial court erred when it dismissed the bad faith claim against Binion, State Farm's employee adjuster. Third, Breedlove contends the trial court erred when it granted summary judgment to State Farm. We consider each issue in turn.

For his first issue on appeal, Breedlove asserts the trial court did not have subject matter jurisdiction because the bad faith claim was unripe when the complaint was filed. We review jurisdiction issues *de novo*. *Harrison v. Park Hills Bd. of Adjustment*, 330 S.W.3d 89, 93 (Ky. App. 2011).

Before we begin our analysis of this first issue, it is necessary to address certain procedural irregularities. Breedlove first brought this argument to the attention of the trial court in his second CR 59.05 motion, which was also after he filed his first notice of appeal. Breedlove argues that the successive CR 59.05 motion was appropriate, in that he was addressing the trial court's amended opinion and order, which was substantively different than the trial court's previous opinion and order. Even leaving aside the propriety of a successive CR 59.05

-12-

motion, however, "[a] party cannot invoke CR 59.05 to raise arguments and to introduce evidence that should have been presented during the proceedings before the entry of the judgment." *Gullion v. Gullion*, 163 S.W.3d 888, 893 (Ky. 2005). Additionally, Breedlove first argued this issue after he filed his first notice of appeal. "As a general rule, except with respect to issues of custody and child support in a domestic relations case, the filing of a notice of appeal divests the trial court of jurisdiction to rule on any issues while the appeal is pending." *Johnson v. Commonwealth*, 17 S.W.3d 109, 113 (Ky. 2000) (citation omitted). *See also City of Devondale v. Stallings*, 795 S.W.2d 954, 957 (Ky. 1990), *superseded on other grounds by rule as stated in Mahl v. Mahl*, 671 S.W.3d 140 (Ky. 2023) ("A notice of appeal, when filed, transfers jurisdiction of the case from the circuit court to the appellate court.").

Ordinarily, either of these procedural barriers would prevent us from considering the issue entirely. However, Breedlove's argument concerns subject matter jurisdiction, which "cannot be waived or conferred by agreement, and a party may challenge a court's lack of subject matter jurisdiction any time, even for the first time on appeal." *Commonwealth v. B.H.*, 548 S.W.3d 238, 245 (Ky. 2018) (citation omitted). For this reason alone, we will address Breedlove's argument; however, counsel should be cautioned against attempting a similar procedural strategy in future practice.

Breedlove's subject matter jurisdiction argument relies on a combination of principles found in *Doe v. Golden & Walters, PLLC*, 173 S.W.3d 260 (Ky. App. 2005), and *United States Liability Insurance Co. v. Watson*, 626 S.W.3d 569 (Ky. 2021). In *Doe*, the trial court had granted summary judgment for legal malpractice claims, and the issue arose as to whether those claims were ripe for adjudication. We reasoned that the ripeness of a claim depended on whether the damages were "fixed and non-speculative." *Doe*, 173 S.W.3d at 270. We held that the legal malpractice claim was unripe "because it was filed prematurely before any of the causes of action asserted ever accrued." *Id*. at 263. Ultimately, we reasoned that, "[b]ecause an unripe claim is not justiciable, the circuit court has no subject matter jurisdiction over it." *Id*. at 270 (footnote omitted). Without subject matter jurisdiction, the trial court's summary judgment orders, which had dismissed the unripe claims with prejudice, were remanded for the circuit court to dismiss the claims *without* prejudice. *Id*. at 263-64.

More recently, in *Watson*, the Kentucky Supreme Court determined that bad faith claims accrued when the parties settled the underlying claim; the Supreme Court reasoned that this step satisfied the first element of a bad faith claim, "an obligation to pay under the policy[.]" *Watson*, 626 S.W.3d at 575 (citing *Wittmer v. Jones*, 864 S.W.2d 885, 890 (Ky. 1993)). Breedlove, combining these principles, argues that his bad faith claims in this case accrued when State

Farm settled its liability on March 8, 2018, per the reasoning in *Watson*, but the bad faith claims were filed alongside the original complaint in 2017. Pursuant to *Doe*, Breedlove now argues the bad faith claims were not ripe when filed, and the appropriate remedy is for our Court to remand for the trial court to dismiss without prejudice.

Breedlove's novel argument, though interesting, is distinguishable from the rationale used to find lack of subject matter jurisdiction in *Doe*. The ripeness issue in *Doe* involved questions of legal malpractice, specifically whether "the attorney's negligence in the preparation and presentation of a litigated claim result[ed] in the failure of an otherwise valid claim [.]" *Doe*, 173 S.W.3d at 271 (internal quotation marks and citation omitted). Furthermore, the analysis in *Watson*, in which bad faith claims were held as accruing at the time of settlement, was within the specific context of determining the timing of the statute of limitations. *Watson*, 626 S.W.3d at 574. Neither the reasoning in *Doe* nor that in *Watson* is directly applicable to this case.

Furthermore, Breedlove's subject matter jurisdiction argument fails to acknowledge that his reasoning, if accepted, would invalidate bifurcation as the usual method by which bad faith claims are prosecuted, which has been the common and accepted practice for at least three decades in the Commonwealth. "A bifurcated procedure was the proper way to try the present case." *Wittmer v.*

*Jones*, 864 S.W.2d 885, 891 (Ky. 1993). "While we see no impediment to joinder of the claims in a single action, at trial the underlying negligence claim should first be adjudicated. Only then should the direct action against the insurer be presented. Liability insurance should not be interjected needlessly into the trial of a negligence case." *Id.*

Coming to the present day, the Kentucky Supreme Court has recently held that, although bifurcation is not always necessary in bad faith claims, "in cases where both a tort claim and a bad faith claim are alleged, best practice will usually be for the trial court to bifurcate the claims for trial and to stay discovery on the bad faith claim until the tort claim is resolved." *State Farm Mutual Automobile Insurance Company v. Edwards*, 670 S.W.3d 873, 880 (Ky. 2023); *see also Estate of Bramble v. Greenwich Insurance Company*, 671 S.W.3d 347, 351-52 (Ky. 2023) ("[N]o case establishes a hard and fast rule for when a third-party claimant can bring a bad faith case."). We are not at liberty to overrule the established precedents set by the Kentucky Supreme Court or its predecessor court. *Kindred Healthcare, Inc. v. Henson*, 481 S.W.3d 825, 829 (Ky. App. 2014) (citing SCR[6] 1.030(8)(a)). For these reasons, we decline Breedlove's invitation to find the trial court lacked subject matter jurisdiction in this case.

---

[6] Rules of the Kentucky Supreme Court.

Moreover, Breedlove's argument fails to distinguish between particular-case jurisdiction and general subject matter jurisdiction. "Once a court has acquired subject[]matter and personal jurisdiction, challenges to its later rulings and judgment are questions incident to the exercise of jurisdiction rather than to the existence of jurisdiction." *Martin v. Commonwealth*, 576 S.W.3d 120, 122 (Ky. 2019) (quoting *Commonwealth v. Steadman*, 411 S.W.3d 717, 722 (Ky. 2013)) (emphasis omitted). It is indisputable that circuit courts have subject matter jurisdiction to hear UCSPA claims so long as the jurisdictional amount is met. "Jurisdiction over a particular case can perhaps be the most difficult of the jurisdictional ideas, as it also includes, or at least relates to, concepts such as *ripeness*[.]" *Nordike v. Nordike*, 231 S.W.3d 733, 738 (Ky. 2007) (emphasis added). Unlike general subject matter jurisdiction, which can be raised at any time, particular-case jurisdiction is subject to waiver. *Steadman*, 411 S.W.3d at 722.

Breedlove filed his claim in 2017, and *Watson*, upon which *Breedlove* predicates his argument, was rendered in 2021. Yet, at no time between 2021 and the trial court's original order granting State Farm summary judgment in May 2022, did Breedlove move the court to dismiss his UCSPA claims without prejudice. To the contrary, Breedlove sought discovery and otherwise indicated that the case should proceed to trial. Breedlove only raised the ripeness issue after

-17-

the trial court granted State Farm's motion for summary judgment when he filed his second CR 59.05 motion in August 2022.

For all intents and purposes, Breedlove invited the alleged error he now complains about before this Court. "We have often held that a party is estopped to take advantage of an error produced by his own act." *Wright v. Jackson*, 329 S.W.2d 560, 562 (Ky. 1959). "Invited errors amount to a waiver and are not subject to appellate review." *Webster v. Commonwealth*, 438 S.W.3d 321, 324 (Ky. 2014).

For his second issue on appeal, Breedlove contends the trial court erroneously dismissed his bad faith claim against Binion, State Farm's employee adjuster. Breedlove cites *Davidson v. American Freightways, Inc.*, 25 S.W.3d 94 (Ky. 2000), which held "that the UCSPA and the tort of 'bad faith' apply only to those persons or entities (and their agents) who are 'engaged . . . in the business of entering into contracts of insurance.'" *Id.* at 102 (quoting KRS 304.1-040). Based on this holding, Breedlove argues that Binion, as an agent of State Farm, may be held individually liable in a bad faith action. However, this reading is contradicted elsewhere in *Davidson*, which contained the following analysis:

> The gravamen of the UCSPA is that an insurance company is required to deal in good faith with a claimant, whether an insured or a third-party, with respect to a claim which the insurance company is *contractually obligated* to pay. Absent a contractual obligation, there simply is no bad faith cause of action, either at common

law or by statute.  In the case at bar, AFI was under no contractual obligation to pay the Davidsons' claims; thus, there exists no statutory or common law basis for a bad faith claim against it.

*Id*. at 100 (emphasis in original).  Because Binion was not himself contractually obligated to pay Breedlove, State Farm argues that the trial court properly dismissed the action against him.

The trial court correctly observed that this is an unsettled area of law, and the federal courts sitting in Kentucky have frequently made the same observation.[7]  In more than a decade following this observation, the Eastern District of Kentucky has repeatedly observed the lack of clarity regarding whether UCSPA claims may be asserted against an insurance adjuster.  *See, e.g.*, *Shedmax, LLC v. Nationwide General Insurance Company*, No. 6:19-280-KKC, 2020 WL 6276935 (E.D. Ky. Oct. 26, 2020); *Howard v. Allstate Vehicle and Property*

---

[7]  As then-District Judge Amul R. Thapar framed the issue:

The characters in "The Usual Suspects" spend much of the movie asking "who is Keyser Söze?"  Is he a real person, or just an imaginary legend?  A similarly mysterious question is whether a plaintiff can sue an insurance adjuster on a bad-faith claim under Kentucky law.  The Court has considered this issue before in the context of fraudulent joinder, *see Gibson v. Am. Mining Ins. Co.*, No. 08-118-ART, 2008 WL 4602747 (E.D. Ky. Oct. 16, 2008) (Thapar, J.), and considers it again here.  But until Kentucky's courts decide the question, federal courts are left to wonder.

*Collins v. Montpelier U.S. Ins. Co.*, No. 11-166-ART, 2011 WL 6150583, at *1 (E.D. Ky. Dec. 12, 2011).  As of this writing, Judge Thapar serves on the United States Court of Appeals for the Sixth Circuit.

*Insurance Company*, No. 7:19-CV-0016-GFVT, 2019 WL 1951443 (E.D. Ky. May 2, 2019).[8]  In contrast to the generally questioning position adopted by the Eastern District of Kentucky, "the Western District of Kentucky has routinely held that a plaintiff does not have colorable claims against insurance adjusters for UCSPA or common law bad faith claims.  *See, e.g.*, *Madison v. Nationwide Mut. Ins. Co.*, No. 1:11-CV-157-R, 2012 WL 692598, at *3 (W.D. Ky. Mar. 2, 2012) (collecting cases)." *Shedmax*, 2020 WL 6276935, at *3.

As previously stated, we are bound by the precedents established by our Supreme Court.  SCR 1.030(8)(a).  The *Davidson* decision is one such precedent.  However, the two portions of *Davidson* cited by the parties in this case are inherently contradictory.  Without further guidance from the Kentucky Supreme Court, we are forced to interpret what *Davidson* intended on this issue.

After some consideration, we agree with the general position adopted by the Western District of Kentucky and hold that adjusters employed by the insurer are not liable for UCSPA or common law bad faith claims.  In this, we are persuaded by the Western District's reasoning in *Wolfe v. State Farm Fire and Casualty Co.*, which focused on the necessity of contractual privity for bad faith:

> *Davidson* focused on the liability of an uninsured
> or self-insured entity for statutory and common law bad

---

[8]  Per Kentucky Rules of Appellate Procedure (RAP) 41, unpublished opinions are not binding authority, and the unpublished opinions regarding this issue are cited only for consideration of the points of law for which we lack sufficient published authority.

> faith, but did not speak to an individual adjuster's
> liability for bad faith. 25 S.W.3d 94. The Kentucky
> Supreme Court "conclude[d] that both the statute and the
> common law tort apply only to persons or entities
> engaged in the business of insurance." *Id*. at 95.
> However, there are plenty of reasons that liability was
> limited to those with a contractual obligation to pay the
> disputed claim. *Id*. at 98 and 100 (concluding that the
> "Kentucky Insurance Code was designed to regulate"
> those "in the business of entering into contracts of
> insurance" and that one of the elements of a bad faith
> claim is the insurer's obligation to pay the claim).
>
> Thus, *Davidson* does state that the statute was
> "clearly intended to regulate the conduct of insurance
> companies." 25 S.W.3d at 96. [The adjuster] was not a
> party to the Wolfes' insurance contract and did not have
> a personal obligation to pay any claims of the Wolfes. If
> any bad faith occurred, this Court concludes it is
> unreasonable to conclude Kentucky law would hold [the
> adjuster] individually liable.

*Wolfe v. State Farm Fire and Cas. Co.*, No. 3:10-CV-545-H, 2010 WL 4930680, at

*3 (W.D. Ky. Nov. 30, 2010). *Wolfe* comports with this Court's subsequent

holding that, "in the absence of a contractual obligation to pay, there can be no

action for bad faith." *Kentucky Nat. Ins. Co. v. Shaffer*, 155 S.W.3d 738, 742 (Ky.

App. 2004) (citing *Davidson*, 25 S.W.3d at 100). Finally, we are mindful that this

appears to be the majority position among courts considering the issue. *See*

WILLIAM J. SCHERMER, IRVIN E. SCHERMER, 1 AUTO. LIABILITY INS. 4th § 15:10

(October 2023 Update) ("A majority of courts deciding the issue have held that an

insurance adjuster employed by the insurer is not liable to the insured for bad faith,

-21-

because the adjuster was not a party to the insurance contract and has no independent duty of good faith to the insured. Likewise, an independent adjuster or adjusting firm hired by the insurer owe [*sic*] no duty of good faith to the insured; their duty is to the insurer that hired them.").

Here, it is unquestioned that Breedlove was in a contractual relationship with State Farm and not Binion, the adjuster employed by State Farm. Because Binion was under no contractual obligation to pay Breedlove, no action for bad faith may lie against him. *Shaffer*, 155 S.W.3d at 742.

For his third and final issue on appeal, Breedlove contends the trial court erroneously granted summary judgment to State Farm when there were genuine issues of material fact as to the insurer's liability for bad faith. "[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Steelvest, Inc. v. Scansteel Service Center, Inc.*, 807 S.W.2d 476, 480 (Ky. 1991) (quoting CR 56.03). In our review of the trial court's summary judgment decision, we are required to view the record "in the light most favorable to the non-moving party." *Pearson v. Pearson*, 552 S.W.3d 511, 514 (Ky. App. 2018). "We apply a *de novo* standard when reviewing

conclusions of law, with no deference to the trial court's decision." *Id*. (citing *Davis v. Scott*, 320 S.W.3d 87, 90 (Ky. 2010)).

Breedlove asserts that the 911 calls, at least one of which identified Coles's vehicle as being at fault for the collision, suffice to show factual issues on which he might have prevailed at jury trial. Furthermore, Breedlove points to the extended delay, approximately sixteen months before State Farm's settlement offer, as demonstrating bad faith. Finally, Breedlove asserts that the trial court erroneously required him to produce an expert in insurance claims when Kentucky does not require expert testimony in bad faith claims.

We disagree with Breedlove's arguments. *Wittmer* states three elements are required to prevail on a bad faith claim:

> (1) the insurer must be obligated to pay the claim under the terms of the policy; (2) the insurer must lack a reasonable basis in law or fact for denying the claim; and (3) it must be shown that the insurer either knew there was no reasonable basis for denying the claim or acted with reckless disregard for whether such a basis existed.

864 S.W.2d at 890. Furthermore, "[a]n insurer is . . . entitled to challenge a claim and litigate it if the claim is debatable on the law or the facts." *Id*.

First, the 911 calls may have created a question of fact regarding the underlying negligence claim, but they were not sufficient to show State Farm acted in bad faith, owing to the second element in *Wittmer*. It is undisputed that State Farm relied on the police report, later shown to be inaccurate, in making its initial

-23-

assessment of liability. Insurers commonly rely on police reports as evidence regarding the circumstances of an incident giving rise to a claim; *see, e.g.*, *Phoenix American Administrators, LLC v. Lee*, 670 S.W.3d 832, 836 (Ky. 2023); *Gibson v. Kentucky Farm Bureau Mut. Ins. Co.*, 328 S.W.3d 195, 198 (Ky. App. 2010). In Breedlove's deposition, he admitted that the incorrect police report made him look like he was responsible for the collision. "When liability is clear or 'beyond dispute,' a claim must be paid. . . . But when liability is not clear or disputed, an insurer may pursue its defense and contested liability until its duty under [UCSPA] is triggered." *Mosley v. Arch Specialty Insurance Company*, 626 S.W.3d 579, 588 (Ky. 2021).

Second, even though Breedlove faced a delay in State Farm's recognition of the claim, "mere delay in payment does not amount to outrageous conduct absent some affirmative act of harassment or deception." *Messer v. Universal Underwriters Insurance Company*, 598 S.W.3d 578, 592 (Ky. App. 2019) (citation omitted). Breedlove has not pointed to any evidence of outrageous conduct, there is no such evidence in the record, and the delay, of itself, does not qualify as outrageous.

Finally, Breedlove asserts that the trial court erroneously required him to produce an expert when experts are not explicitly required by Kentucky law in bad faith cases. The record actually reflects that the trial court was puzzled as to

how Breedlove was going to show State Farm violated insurance industry practices without an expert to testify on that issue. More to the point, however, an examination of the record shows that the trial court was rightly concerned that Breedlove had not produced evidence of bad faith when the case had remained largely stagnant for over three years. The burden of summary judgment "may be met by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Steelvest*, 807 S.W.2d at 481 (citation omitted). Such is the case here.

"The party opposing a properly supported summary judgment motion cannot defeat it without presenting at least some affirmative evidence showing that there is a genuine issue of material fact for trial[.]" *Baptist Physicians Lexington, Inc. v. New Lexington Clinic, P.S.C.*, 436 S.W.3d 189, 194 (Ky. 2013). The trial court correctly pointed out that Breedlove repeatedly violated deadlines for key discovery without that discovery ever being taken. "[T]he hope that something will come to light in additional discovery is not enough to create a genuine issue of material fact." *Wright v. Miller*, 629 S.W.3d 813, 819 (Ky. App. 2021) (quoting *Benningfield v. Pettit Environmental, Inc.*, 183 S.W.3d 567, 573 (Ky. App. 2005)). Based on these principles, we cannot say that the trial court erred when it granted summary judgment to State Farm.

## III. CONCLUSION

For the foregoing reasons, we affirm the trial court's orders granting summary judgment to State Farm and dismissing the bad faith claim against its adjuster, Gary Binion.


ALL CONCUR.

BRIEFS AND ORAL ARGUMENT
FOR APPELLANT:

Sarah Chervenak
Louisville, Kentucky

BRIEF FOR APPELLEES:

Richard W. Edwards
Kathryn M. Waller
Louisville, Kentucky

ORAL ARGUMENT FOR
APPELLEES:

Richard W. Edwards
Louisville, Kentucky

BRIEF FOR KENTUCKY DEFENSE
COUNSEL, INC., AS *AMICUS
CURIAE* IN SUPPORT OF GARY
BINION:

Edward M. O'Brien
Andrew Bokeno
Louisville, Kentucky